[S. F. No. 2636.   Department One. — November 9, 1901.]

## AMELIA SCHNEIDER, Respondent, v. MARKET STREET RAILWAY COMPANY, Appellant.

NEW TRIAL — NOTICE — STATEMENT — MOTION UPON MINUTES — APPEAL FROM ORDER — PRESUMPTIONS. — The statement, whether made on motion for a new trial, or after a motion made on the minutes of the court, need not embody the notice of the motion, or its contents; and the presumption upon appeal in either case is, that the notice was duly given, and that the specifications contained in the statement conform to those in the notice. Where the motion was made upon the minutes of the court, it will also be presumed upon appeal, without a formal statement to that effect, that the specifications set out in the statement were in fact argued, as well as contained in the notice.

ACTION FOR DEATH — COLLISION OF STREET-CAR WITH FOOTMAN — SPECIFICATIONS IN STATEMENT. — In an action for death, caused by the alleged collision of a street-car with a footman at the intersection of two streets, a specification, in the statement of insufficiency of evidence, tending to show that the deceased "was struck by the car while making an attempt to pass over East Street, at a public crossing," the connection of which shows that it may be construed as specifying merely that there was no public crossing where the accident occurred, does not support the contention that the defendant was killed by slipping and falling upon the pavement without actual contact with the car, and that the evidence was insufficient to war-

rant the jury in finding that the deceased was in fact struck by the car.

Id. — Negligence of Street-railway Company — Excessive Speed — Absence of Warning Required by Ordinance. — Where there was evidence from which the jury might infer that the street-car was crossing the intersection of its line with another street, at an excessive rate of speed, when it collided with the deceased, and where it affirmatively appears as an established fact that no bell was rung or gong sounded as the car approached the limit of twenty-five feet from the intersecting street, as required by a city ordinance set out in the complaint, the negligence of the street-railway company is sufficiently established to support the verdict for the plaintiff.

Id. — Construction of Ordinance — Warning at "Street Crossing" — Protection of Foot-passengers — Streets Terminating at Intersection. — A city ordinance requiring a warning to be given by a street-car when approaching a "street crossing," is designed for the protection of foot-passengers, and the reason of the rule applies equally to all intersecting streets across which streams of foot-passengers pass. Such ordinance is to be construed as applying to all intersecting streets, including those which terminate at the point of intersection with the street upon which the cars pass.

Id. — Contributory Negligence of Plaintiff — Burden of Proof — Question for Jury. — The burden of proof is upon the defendant to establish the contributory negligence of the plaintiff; and such contributory negligence is a question of fact for the jury, whose verdict thereon is conclusive, where the existence of such contributory negligence, and that it contributed proximately to the injury, does not appear to follow necessarily and irresistibly from the undisputed facts, so as to justify the court in disturbing the verdict as matter of law.

Id. — Crossing Track in Front of Street-car — Ordinary Prudence. — Ordinary prudence is required on the part of all persons crossing the track in front of a moving car; but the question what is ordinary prudence is widely different in a case where the crossing is in front of a street-car, from that where it is in front of an ordinary steam-railroad. Held, upon the facts of this case, that it cannot be said, as matter of law, that the action of the deceased in crossing the street in front of the street-car was the proximate cause of the injury, or that it necessarily constituted negligence on his part.

Id. — Plaintiff Suddenly Put in Peril — Unwise Choice. — Where the plaintiff was suddenly put in peril by the negligence of the defendant, without having sufficient time to consider all the circumstances, he is excusable for omitting some precaution or making an unwise choice under this disturbing influence, and even if, in his bewilderment, he runs into the danger he fears, he is not at fault.

Id. — Evidence — Contact of Car with Deceased — Impeachment of Witness — Question for Jury. — Where the motorman testified that he could not tell whether the car came in contact with the de-

ceased, he may be impeached by the evidence of witnesses in regard to statements by him to the contrary, which he denied upon cross-examination; and it is a question for the jury whether such statements were made by the witness, as testified by the impeaching witnesses.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. William R. Daingerfield, Judge.

The facts are stated in the opinion.

W. H. L. Barnes, for Appellant.

William J. Herrin, for Respondent.

SMITH, C.—Carl Richard Schneider was killed, in this city, at the junction of East and Pacific streets, by one of the defendant's street-cars, and this suit was brought by the plaintiff, his mother and sole heir, to recover damages for the killing. The case was tried by a jury, who found for the plaintiff in the sum of five thousand dollars, and judgment was entered accordingly. The defendant appeals from an order denying its motion for a new trial.

The motion was made on the minutes of the court, and it is objected that "there is nothing in the statement to indicate that a notice of motion was ever given, of if given, as to its contents." But it is not necessary that the statement should thus indicate. The presumption, in the absence of a showing to the contrary, is, that the notice was duly given, and that the specifications contained in the statement conform to those in the notice. (*Pico* v. *Cohn*, 78 Cal. 386, 387, and cases cited; 4 Notes on Cal. Rep. 482.) This rule applies equally, whether the order appealed from was made on a statement of the case or on the minutes of the court. (Code Civ. Proc., sec. 659, subds. 3, 4; sec. 661.) The requirements of the latter section that the statement shall contain only "the grounds argued before the court for a new trial" refer to the specifications of grounds mentioned in subdivision 4 of section 659, or such of them as are in fact argued; and when specifications are set out in the statement, it will be presumed, without a formal statement to that effect, that they were contained in the notice, and that they were in fact argued. In the cases cited by respondent's counsel (*Leonard* v. *Shaw*, 114 Cal. 72, and *Sprigg*

v. *Barber,* 122 Cal. 574), there were no specifications in the statement.

The points urged by the appellant are, insufficiency of the evidence to justify the verdict, and erroneous rulings of the court on questions of evidence, and in its instructions to the jury.

1. The accident occurred about half-past six in the evening. The deceased was crossing East Street, from the southern sidewalk of Pacific, and was killed in crossing the track in front of the car.  He was seen momentarily by the motorman as he emerged from the darkness into the stream of light thrown forward by the headlight of the car, and was next seen, on the car being stopped, lying on his face in the street, to the eastward of the track, and opposite or somewhat to the rear of the rear open end of the car, — his feet near the track, his head towards the bay.  He was then in an unconscious and dying condition, the result of a fracture of the skull, with contusion and hemorrhage of the brain.

It is argued at length by the appellant's counsel that "these circumstances make it possible, if they do not lead to the conclusion, that the defendant was killed by slipping and falling upon the pavement without actual contact with the car," and, in effect, that the jury was not justified in drawing a contrary inference.  But the only specification on this point is, that there was no evidence tending to show that deceased "was struck by the car while making an attempt to pass over East Street, *at a public crossing,*" which, taken in connection with the preceding specification, may be construed as specifying merely that there was no street crossing or public crossing at the place where the accident occurred.  It will be unnecessary, therefore, to consider the sufficiency of the evidence to justify the jury in finding that the deceased was in fact struck by the car.

With regard to the defendant's negligence, the principal charges are that the rate of speed of the car, at the time of the accident, was in excess of the statutory limit of eight miles an hour (Civ. Code, sec. 501), and that no bell was rung or gong sounded on approaching Pacific Street, as required by the municipal ordinance set out in the complaint.

With regard to the rate of speed at which the car was going, the evidence is somewhat meager.  There was testimony, on behalf of the plaintiff, that it was going very fast, and accord-

ing to one of the witnesses, "unusually fast," and "as fast as [he] ever saw a car going before"; but none of these witnesses could give the rate of speed. On behalf of the defendant, the motorman and conductor testified that the car was going at the rate of about four miles an hour; but the time consumed in arriving at the place of the accident, from the point of starting, as given by themselves, would indicate a rate of about six and a half miles an hour. The motorman also says that he "stopped the car within fifteen or eighteen feet," and that it would have required "no less than between thirty-five and fifty feet to stop a car going full speed," etc. But, according to his own testimony, the deceased, when first seen, was ten feet in front of the car, which was twenty-eight feet long, and, according to the testimony of one of the witnesses (Anderson), the deceased was found, on the stoppage of the car, about eight feet in rear of its rear end,—thus making the distance passed about forty-six feet, and indicating that the car was going, at least, at the full speed of eight miles per hour. But Anderson —who was familiar with the line—also testifies that "when [the cars] are going fast they can stop in fifteen or twenty or twenty-five feet to take passengers off and on"; from which the inference may be drawn that the car was going at more than full speed, or eight miles an hour; and if such an inference was drawn by the jury, we cannot say they were not justified in making it. (*Johnsen* v. *Oakland etc. Railway*, 127 Cal. 610, 611.) Though, possibly, it may be said, as was said by this court in a somewhat similar case, "that a verdict founded on such speed alone as constituting negligence on the part of appellant could hardly be sustained." (*Driscoll* v. *Cable Ry. Co.*, 97 Cal. 564, 565.[1])

It seems, however, to be an established fact in the case that no bell was rung or gong sounded on the car as it approached the limit of twenty-five feet from Pacific Street, as was required by the ordinance set out in the complaint. This fact is not contested by the appellant, but the contention is, in effect, that the junction of the two streets cannot be regarded as a "street crossing," and hence that the ordinance does not apply to it. But this contention, we think, cannot be admitted. The term used in the ordinance, according to its common use, includes all intersections of streets, and equally applies though

[1] 33 Am. St. Rep. 203.

one of them may terminate at the point of intersection (see Webster's Dictionary, words "Cross" and "Crossing," and diagrams under former term); and the reason of the rule applies equally to all street crossings or intersections. For, where one street intersects another, there are always passing along the former, so to speak, two streams of foot-passengers approaching the latter, of which, the one diverges along and the other crosses the street approached; and this is equally true, whether the intersecting street passes beyond the other street or terminates in it. Hence the reason of the rule—which is the protection of foot-passengers crossing the street approached—will equally apply in both cases.

It remains to consider the question of alleged contributory negligence on the part of the plaintiff's decedent. In considering this, it is important to bear in mind that such negligence is a matter of defense, to be proved affirmatively by the defendant, and hence that the burden of proof is on him. (*Robinson* v. *Western Pacific R. R. Co.*, 48 Cal. 426; *McQuilken* v. *Central Pac. R. R. Co.*, 50 Cal. 8; *Nehrbas* v. *Central Pac. R. R. Co.*, 62 Cal. 334; *MacDougall* v. *Central Pac. R. R. Co.*, 63 Cal. 434; *Yik Hon* v. *Spring Valley Water Works*, 65 Cal. 620; *Magee* v. *North Pacific Coast R. R. Co.*, 78 Cal. 433;[1] *House* v. *Meyer*, 100 Cal. 593.) "In this state . . . it is sufficient for the plaintiff to show, in the first instance, that the injury resulted from the negligence of the defendant." (*Smith* v. *Occidental etc. Steamship Co.*, 99 Cal. 468; and see also Shearman and Redfield on Negligence, secs. 107–109, there cited.) Hence, to justify the court in disturbing the verdict, it must affirmatively appear, as a matter of law, "from the undisputed facts, judged of in the light of that common knowledge and experience of which the courts are bound to take judicial notice, that [the plaintiff] has not exercised such care as men of common prudence usually exercise in positions of like exposure and danger" (*Fernandes* v. *Sacramento City Ry. Co.*, 52 Cal. 52); and it is said (p. 54), "the evidence against the plaintiff should be so clear as to leave no room for doubt," and the facts such "that the inference is irresistible." (See also Shearman and Redfield on Negligence, secs. 55, 56.) It must also appear affirmatively, in the same conclusive way, that the negligence of the plaintiff was, in whole or in part, the proximate cause of

[1] 12 Am. St. Rep. 69.

the injury, or in other words, that it contributed to that effect. (*Smith* v. *Occidental etc. Steamship Co.*, 99 Cal. 468.) And with regard to the question of negligence, it is to be observed that it falls within the province of the jury not only to determine the facts constituting negligence, but also the question as to what would be the conduct "of a person of ordinary prudence" under similar circumstance,—which, commonly, is a question of fact, not of law. (*Fernandes* v. *Sacramento City Ry. Co.*, 52 Cal. 50; *Walgren* v. *Market Street Ry. Co.*, 132 Cal. 656.) In general, all these questions are for the jury, whose verdict in favor of the plaintiff must be regarded as conclusive, unless the validity of the defense, both as to the existence of the negligence, and its effect as contributing proximately to the injury, follows necessarily from the undisputed facts. Hence, as intimated in *Smith* v. *Occidental etc. Steamship Co.*, 99 Cal. 468, it is only in rare cases that a verdict for the plaintiff can be disturbed on this ground. In this, the case is to be distinguished from a case where the ground of the objection is insufficiency of the evidence to show negligence on the part of defendant, where the affirmative of the issue is on the plaintiff, and where, consequently, there must be satisfactory evidence of such negligence (Code Civ. Proc., secs. 1935, 2061, subd. 5); while in cases of the former kind the presumption is in favor of the plaintiff (Code Civ. Proc., sec. 1963, subd. 4; *Pennsylvania R. R. Co.* v. *Werner*, 89 Pa. St. 65), and to set aside a verdict in his favor on the ground of his contributory negligence, such negligence must affirmatively appear as a conclusion of law from the undisputed facts. (*Pennsylvania R. R. Co.* v. *Werner*, 89 Pa. St. 66.) Also, in applying these principles a distinction is to be noted between cases of injuries by street-railroads, and cases of injuries by "ordinary steam-railroads running through the country at comparatively long intervals of time." In either case, "ordinary prudence" is required on the part of persons crossing the track; but the question of what is ordinary prudence is widely different in the two cases. *Driscoll* v. *Cable Ry. Co.*, 97 Cal. 565;[1] *Clark* v. *Bennett*, 123 Cal. 278, 282; *Everett* v. *Los Angeles Ry. Co.*, 115 Cal. 117, 118.)

In the case at bar, it appears the deceased was killed while attempting to cross the track in front of the car. How far he

---

[1] 33 Am. St. Rep. 203.

was from the car when he started to cross cannot be regarded as determined. The motorman testifies that when he first saw him emerge into the light in front of the car, he was about ten feet in front of it and eight feet to the left of the track. But it was for the jury to determine the credibility of this testimony; and in view of the inconsistencies of the witness's statements with reference to distances and speed, and the evidence of witnesses as to statements made to them, which he denied, — or, indeed, without regard to these circumstances, — we cannot say that the jury were not justified in disregarding his testimony. All, therefore, that can be regarded as certain with regard to the distance of the deceased from the car, when he started to cross, is, that it was such that he was struck by it. But with reference to the question of negligence in crossing, some inference in his favor may be drawn from the testimony of the witness Hubbell, who saw him start to cross from the sidewalk, and who himself does not seem to have been apprehensive of any danger, and also from the testimony of witness Lainer, who testified that the eyesight of the deceased was bad, on account of the acid business in which he was engaged; that he could recognize one as far as across the room, but "could not see very far." There was also some evidence from which the jury may have inferred that the injury was the result of want of proper diligence on the part of the motorman after he first saw the deceased. From the testimony of Anderson, combined with that of the motorman, it appears that the car, on stopping, passed over a distance of about forty-six feet, or if deceased was more than ten feet in front of the car when first seen, correspondingly more; and also from the testimony of Anderson, that the car, when going at full speed, could be stopped within " fifteen or twenty or twenty-five feet." It seems, also, that the means used by the motorman to stop the car was that of putting on the brake, and that he "did not use the reverse "; though it appeared from the written instructions of the company that the latter was the course enjoined in cases of "any danger of striking a person or vehicle." The witness indeed testified that the former was the more effective means. But, in the absence of other testimony, the jury may have believed that the rule enjoined by the company was the wiser. In addition, it appeared that it was a dark night, that the street was badly lighted, especially at the place of the accident, and that it was free from vehicles; also, that the car was lighted

within by several lamps and carried a headlight. These, with the unusual speed of the car, and the failure to strike the bell or gong, are the material facts of the case, so far as they can be regarded as determined.

Upon these facts, we cannot say, "as a matter of law, that the negligence of the deceased was the proximate cause of the injury" (*Driscoll* v. *Cable Ry. Co.*, 97 Cal. 565[1]); nor even that his attempt to cross the street in front of the car necessarily constituted negligence. (*Wahlgren* v. *Market Street Ry. Co.*, 132 Cal. 656.)

On the latter point, it may be admitted, having regard to the position of the deceased when first seen by the motorman, as he emerged into the light, that it was imprudent in him to make the attempt to cross by accelerating his pace, or as expressed by the witness, by "making a fast dash" across in front of the car. But it is possible, not to say probable, that he was brought into this position by the negligence of the motorman in failing to ring the bell, and that his dash across the track was the result of perturbation of mind upon his suddenly becoming aware of the proximity of the car by the striking of the gong, which was then struck for the first time. In such case, the principle would apply, that "if the plaintiff is suddenly put into peril, without having sufficient time to consider all the circumstances, he is excusable for omitting some precautions, or making an unwise choice, under this disturbing influence, although if his mind had been clear, he ought to have done otherwise. This is especially true if the peril is caused by the defendant's fault"; and of such case it is said, "Even if, in bewilderment, he runs directly into the very danger which he fears, he is not in fault. The confusion of mind, caused by such negligence, is part of the injury inflicted by the negligent person." (Shearman and Redfield on Negligence, sec. 89, and cases cited; *Voak* v. *N. Cont. Ry. Co.*, 75 N. Y. 323; *Pennsylvania Ry. Co.* v. *Werner*, 89 Pa. St. 59, 66.) "It may well have happened, [therefore,] that the jury thought" that if the bell or gong had been sounded at the proper distance, the deceased "would not have been hurt at all" (*Higgins* v. *Deeney*, 78 Cal. 580, 581); and if so, in view of his defective eyesight, and of the fact that on his starting across the street the circumstances were not such as to impress

[1] 33 Am. St. Rep. 203.

the only witness who saw him with the idea of danger, the conclusion cannot be regarded as going beyond the competency of the jury, or even as unreasonable.

So with regard to the effect of plaintiff's negligence, if any, it does not necessarily follow from the fact of such negligence that it contributed proximately to the injury. And the jury may have concluded from the evidence above cited that had proper diligence been used, and the proper means of stopping the car been adopted, the accident would have been avoided. (Shearman and Redfield on Negligence, sec. *99; Everett* v. *Los Angeles Ry. Co.,* 115 Cal. 111, 114, 116.)

On the whole, we think the case comes within the principle of the decision in *Driscoll* v. *Cable Ry. Co.,* 97 Cal. 553.[1] There are some differences between the facts there, and those now presented, but none that are material. In that case, some stress was laid by the court on the fact of an intervening car, by which the view of the deceased may have been intercepted; but this is more than offset by the additional facts appearing in this case,—as, for example, the unusual speed of the car in approaching the crossing, the facts tending to show that it might have been stopped in shorter time, the defective eyesight of the deceased, and other facts we have adverted to. Our conclusion, therefore, may be expressed in the language of that decision: "Under these circumstances,—the appellant being in default for not having given the proper warning,—we think that the question whether deceased was guilty of contributory negligence was a proper one for the jury; that deceased cannot be held, as a matter of law, to have been so guilty. . . . And considering all the evidence and circumstances in the case, . . . and particularly the fact that the deceased had a right to rely upon the usual and required signal of bell-ringing when a car is approaching a crossing, we cannot say that the jury abused its power in holding the defendant not guilty of contributory negligence. The judgment of the learned judge of the court below, who heard all the evidence and refused a new trial, is also entitled to great consideration." (See, on the latter point, Code Civ. Proc., sec. 662.)

2. On the examination in chief, the witness Meley (the motorman) testified that he "could not tell" whether the car came in contact with the deceased; that he "did not see whether he

---

[1] 33 Am. St. Rep. 203.

came in contact with it or not"; and on cross-examination he was asked if he had not said to the witness Glassman,—referring to the deceased,—"I struck him lightly," and if he had not made a similar statement to the witness Hubbell.   Thereupon, objection being made, counsel for plaintiff made the following statement: "I am seeking to impeach this witness, and to show that he made statements at variance with his testimony now on the stand.   I want to show that when he says he did not strike the deceased, *that he did strike him.*   In other words, I propose to show here that he told Mr. Glassman and Mr. Hubbell, etc. . . . . It is for the purpose of impeaching, and for that purpose only."   Whereupon the court said: "If that is the object of it, you may ask him the question. . . . The point is covered by section 2051."   The question was then asked, and the witness replied in the negative.   Subsequently, the witnesses Glassman and Hubbell testified that Meley made to them the statements in question.

There was no error in admitting this testimony.   The reference of the judge to "section 2051" was inadvertent; obviously the reference intended was to section 2052 of the Code of Civil Procedure.   It was no part of the plaintiff's offer to prove "that he [the motorman,—meaning the car] did strike him" (i. e., the deceased).   Though these were the words used, the context shows a different meaning; nor, were it otherwise, would it make any difference.   The testimony was admitted for the purpose of impeachment only.   The statement of the witness Meley, subsequently made, that (he) "presumed [he] did strike Schneider, but [that he] was not sure of it," did not materially vary his former statement; nor was the attention of the court called to it when the testimony of the contradicting witnesses was offered.   Indeed, so long as the first testimony of the witness was not modified or withdrawn, the impeaching testimony was proper.   Whether the statements made to Glassman and Hubbell were made by Meley, or by some other man, was a question for the jury.   Both witnesses testified that they were made by him.

3. The court, on the trial, instructed the jury, in effect, that "if the deceased were guilty of negligence in going upon the track, and yet the motorman in charge of the car, with proper appliances, and in the exercise of ordinary care, could have avoided the injury, the [negligence of the] deceased . . .

would not constitute any defense on the part of the defendant."
This is objected to, on the ground that "there was no evidence
on which it could properly have been based." But the contrary,
as we have seen, was the case. The distance passed over by
the car in stopping, the testimony of Anderson that it could
have been stopped in a much shorter distance, and the failure
of the motorman to reverse the car, as enjoined by the rules
of the defendant, were all facts for consideration by the jury,
and to which the instruction was appropriate.

Objection is also made to the instruction of the court
with regard to the ordinance requiring the ringing of a
bell or the sounding of a gong on approaching a "street cross-
ing." But this objection — which is that there was no street
crossing — has already been considered, and held to be unten-
able.

There were other exceptions to instructions and to the re-
fusal of the court to give instructions. But as these are not
touched upon in the brief of appellant, and as we do not per-
ceive any error, we deem it unnecessary to discuss them.

We advise that the order appealed from be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the order ap-
pealed from is affirmed.

Harrison, J., Garoutte, J., Van Dyke, J.

Hearing in Bank denied.