[Civ. No. 4832. Second Appellate District, Division One.—April 1, 1927.]

## SUSAN M. DAWSON et al., Respondents, v. SAN DIEGO ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—CONFLICTING EVIDENCE—APPEAL—PRESUMPTIONS.—In an action for damages for the death of plaintiff's husband as the result of a collision which occurred at a street intersection between a light automobile truck driven by said husband and an electric street-car which was owned and operated by defendant, where the evidence with reference to the happening of the accident is conflicting, but the case is decided by the jury in favor of plaintiff, on appeal from the judgment the appellate court is bound to assume as true the evidence adduced at the trial in favor of the plaintiff and to construe it in his behalf as favorably as is reasonably possible.

[2] ID.—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF—PROVINCE OF JURY.—In such an action, the defense of contributory negligence is an affirmative one, and the burden of establishing such a defense rests upon the defendant; and the contributory negligence of the plaintiff can be said to exist in those cases only where no deduction or inference from the evidence other than the plaintiff's negligence can be drawn by the jury, and even where the facts in the case are clear and undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury. It is only where the deduction to be drawn from the evidence is inevitably that of plaintiff's negligence that the court is authorized to declare the presence of contributory negligence on the part of the plaintiff and thereupon withdraw the case from the jury.

[3] ID.—RIGHT OF WAY IN FAVOR OF STREET-CAR—DUTY OF AUTOMOBILE DRIVER TO YIELD.—Where a street-car has the right of way under a city ordinance, it is the duty of an automobile driver to yield if, when he starts across the tracks, the relative position of the two vehicles is such that a reasonably prudent man would

1. See 2 Cal. Jur. 921; 19 Cal. Jur. 782; 2 R. C. L. 194.

2. Burden of proof as to contributory negligence, notes, 10 Ann. Cas. 4; 33 L. R. A. (N. S.) 1085. See, also, 3 Cal. Jur. 965; 19 Cal. Jur. 697; 20 R. C. L. 195.

3. Right of driver of vehicle to assume that motorman will give him time to cross track, note, 5 L. R. A. (N. S.) 1081. Care required of automobile driver at street intersection, notes, 28 A. L. R. 217; 46 A. L. R. 1005. See, also, 3 Cal. Jur. 911.

foresee that a collision is likely to occur unless one or the other stops.

[4] ID.—CONTRIBUTORY NEGLIGENCE—EVIDENCE—VERDICT.—In this action for damages for the death of plaintiff's husband as the result of a collision which occurred at a street intersection between a light automobile truck driven by said husband and an electric street-car which was owned and operated by defendant, in view of the evidence as to the speed of the two vehicles, their relative positions at the time the automobile truck entered the intersection, and the care exercised by said husband, the question of the latter's contributory negligence was one exclusively for the jury to determine.

[5] ID.—SPEED OF AUTOMOBILE—EVIDENCE—INSTRUCTIONS.—In such action, the trial court did not err in refusing to instruct the jury in effect that in event the jury found certain stated facts were true, if plaintiff's husband operated his truck within the intersection of the two streets at a greater rate of speed than ten miles per hour, he was guilty of negligence, where no foundation in fact existed upon which to base such requested instruction.

[6] ID. — INDEFINITE INSTRUCTION. — In such action, defendant's requested instruction that if the jury should find from the evidence that plaintiff's husband "was operating said truck at a speed of fifteen miles per hour or twenty-two feet per second, he was guilty of negligence," etc., was properly refused for the reason that it was indefinite as to place or location at which it might be inferred that the truck was being operated.

[7] ID.—DUTY OF MOTORMAN TO SOUND GONG—MUNICIPAL ORDINANCE INSTRUCTIONS.—In such action, the trial court properly instructed the jury that it was the duty of defendant's motorman to sound his gong when approaching the intersection in question so as to give notice to persons desiring to cross said street of the approach of the street-car, where such duty was required by an ordinance of the municipality in which the street-car was being operated.

[8] ID.—CAREFUL HABIT OF AUTOMOBILE DRIVER—EVIDENCE.—In such action, conceding that error was committed by the trial court in admitting, over defendant's objection, evidence of habit of plaintiff's husband as to care in driving his truck, such error was not prejudicial to defendant's substantial rights, where such evidence of habit coincided with the testimony of witnesses produced by plaintiff regarding his conduct at the time the accident occurred.

[9] ID.—SPEED OF STREET-CAR—EVIDENCE.—In such action, it was not error to permit witnesses to testify that at or immediately preceding the time of the accident defendant's street-car was traveling

---

7.  See 3 Cal. Jur. 912; 25 R. C. L. 1242, 1247.

at a speed "faster than the ordinary rate," and that the street-car "was going the faster of the two vehicles."

[10] ID.—PLACE OF COLLISION—IMPROPER DEDUCTION BY TRIAL JUDGE—ABSENCE OF PREJUDICE.—In such action, in response to defendant's objection that no foundation had been laid for one of the passengers on the street-car to testify as to where the collision took place, a remark by the trial judge to the effect that he thought the required foundation would "develop," that "it was obvious that a person on a street-car would know where a collision took place. She might feel it, under the conditions she testified to," while perhaps not a correct deduction, could not have affected the verdict, where the subsequent cross-examination of said witness satisfactorily established that her answer as to where the collision took place was not based upon actual knowledge derived from witnessing the collision, but was from what she felt at the time and from what she afterward saw of the accident, and other witnesses who clearly saw the collision testified fully regarding its location and fixed it at approximately the position indicated by said passenger.

[11] ID. — MISCONDUCT OF TRIAL JUDGE — WAIVER OF OBJECTION — INSTRUCTIONS.—In such action the point that the trial judge committed prejudicial error in remarking to one of defendant's witnesses, "I don't see how you find your way home," was not available on appeal, where no objection was taken to the remark either at the time it was made or at any time during the trial, nor any exception noted thereto, and at the close of the case the jury was fully instructed that it should "not consider anything that may have been said by the court, nor any act of the court during the progress of the trial, as indicating any opinion of the court as to what are or are not the facts in the case, or what has or has not been established, or whether the witness who is testifying is testifying truthfully or not."

[12] ID.—COMPENSATION FOR LOSS—EVIDENCE.—In such action, defendant could not have been prejudiced by the action of the trial court in overruling the objections of defendant to, and in refusing to grant the motion of defendant to strike from the record, testimony of plaintiff concerning whether or not defendant had ever paid her any compensation for loss sustained.

[13] ID.—PECUNIARY WORTH OF DECEASED—EVIDENCE—VERDICT.—In such action, the evidence having shown that the hearing and sight of plaintiff's husband were both good, that prior to his death he was in perfect health, every way, that he was earning $120 a month at the time of his death, that he was a good husband

13.   What is excessive verdict for death by wrongful act, notes, 18 Ann. Cas. 1209; Ann. Cas. 1915C, 449; 48 A. L. R. 817. See, also, 8 Cal. Jur. 1023; 8 R. C. L. 849.

and made a good living and was always tending to his own affairs, and that had he lived for the full term of his life expectancy he would have earned $19,396.80, his pecuniary worth was sufficiently established to justify the verdict in the sum of $10,000.

[14] ID.—EXCESSIVE VERDICT—APPEAL.—A verdict cannot be disturbed on the ground that it is excessive unless it is so plainly and outrageously excessive to suggest, at the first blush, passion or prejudice or corruption on the part of the jury.

[15] ID.—WEIGHT OF EVIDENCE—VERDICT—APPEAL.—In such action, the evidence having been sufficient to warrant the jury in determining that the defendant was guilty of negligence and that plaintiff's husband was free from negligence proximately contributing to the happening of the accident, it was outside the province of the appellate court to consider the evidence for the purpose of determining its weight as to any issue in the pleadings, or in whose favor the evidence as a whole preponderated.

---

(1) 4 C. J., p. 773, n. 2.   (2) 29 Cyc., p. 601, n. 60, p. 631, n. 54. (3) 36 Cyc., p. 1553, n. 38.   (4) 36 Cyc., p. 1629, n. 64.   (5) 36 Cyc., p. 1643, n. 27.   (7) 36 Cyc., p. 1483, n. 38.   (8) 4 C. J., p. 975, n. 88.   (9) 22 C. J., p. 570, n. 96.   (10) 4 C. J., p. 955, n. 35.   (11) 3 C. J., p. 806, n. 79.   (12) 33 C. J., p. 319, n. 89.   (13) 17 C. J., p. 1366, n. 65.   (14) 4 C. J., p. 872, n. 19.   (15) 4 C. J., p. 844, n. 66; 36 Cyc., p. 1601, n. 18.

APPEAL from a judgment of the Superior Court of San Diego County. E. A. Luce, Judge. Affirmed.

The facts are stated in the opinion of the court.

Read G. Dilworth and V. F. Bennett for Appellant.

P. A. Whitacre and W. J. Stanton for Respondents.

HOUSER, J.—Action by plaintiff Susan M. Dawson for damages resulting from the death of her husband William E. Dawson.

It appears that the cause of the death of William E. Dawson was a collision which occurred at a street intersection

---

14. Power of appellate court to interfere with verdict for excessive damages, note, 26 L. R. A. 384. See, also, 8 R. C. L. 673. Rules guiding the courts on appeal in determining excessiveness or inadequacy of verdicts for personal injuries resulting in death, note, L. R. A. 1916C, 810. See, also, 8 Cal. Jur. 833; 8 R. C. L. 849.

15. See 2 Cal. Jur. 918; 2 R. C. L. 194.

between a light automobile truck driven by said Dawson and an electric street-car which was owned and operated by the defendant.

[1] The evidence with reference to the happening of the accident was conflicting, but was decided by the jury in favor of plaintiff. In such circumstances the rule is that on appeal from a judgment, the appellate court is bound to assume as true the evidence adduced at the trial in favor of the plaintiff and to construe it in his behalf as favorably as is reasonably possible. (*Palladine* v. *Imperial Valley F. Lands Assn.*, 65 Cal. App. 727 [225 Pac. 291]; *Aubel* v. *Sosso*, 72 Cal. App. 57 [236 Pac. 319]; *Woodard* v. *Glenwood Lumber Co.*, 171 Cal. 513 [153 Pac. 951]; *Hassell* v. *Bunge*, 167 Cal. 365 [139 Pac. 800]; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 Pac. 1157]; *Dunphy* v. *Dunphy*, 161 Cal. 380 [119 Pac. 512]; *Showers* v. *Zanone*, 7 Cal. Unrep. 263 [85 Pac. 857]; *Carteri* v. *Roberts*, 140 Cal. 165 [73 Pac. 818]; *Smith* v. *Hampshire*, 4 Cal. App. 8 [87 Pac. 224].)

With such rule in mind, for many of the purposes of this appeal it becomes necessary to consider the following conclusions and inferences only which, notwithstanding the conflict in the evidence, the jury was entitled to deduce from evidence produced by plaintiff: Immediately before reaching the intersection of the two streets in a busy portion of the city where the accident in question occurred, Dawson had been driving the truck in a prudent and careful manner at a rate of speed between eight and ten miles per hour; that as he approached such intersection he slackened the speed of his truck to between four and six miles per hour, and looked to both his right and to his left; that it was a sunshiny day and nothing intervened to obstruct his view, and that after he saw the approaching street-car he misjudged either its distance from the intersection, or its speed, or both such distance and such speed, and concluded that he had ample time to pass in front of such street-car in safety to himself; that in essaying such crossing he was driving his truck at a rate of speed not in excess of that provided by any state statute or city ordinance of the city wherein the accident occurred; that in the circumstances then and there present he did not realize the danger that threatened him, nor the imminent peril of his situation until it was too late either

to stop his truck in time or to increase the speed of the truck sufficiently to avoid the collision; that immediately preceding the accident the street-car of defendant which collided with Dawson's truck was traveling down a grade of six and one-tenth per cent and, considering the conditions then and there present, was being operated at a fast and unusual, or at a high and dangerous rate of speed, to wit, of not less than twenty-five miles per hour; that the gong on said street-car was not sounded to give warning of its approach; that, although it was a sunshiny day and although no object interfered with an opportunity for a clear view of whatever was either within or approaching the intersection for a considerable distance, the motorman in charge of the street-car did not see Dawson until "like a flash" the truck appeared in front of him (the motorman) within five or ten feet; that the accident occurred to Dawson's right of the center of the intersection; that in the collision the truck was struck in about its middle, with the result that the body of the truck was torn from the chassis—the wooden portion thereof being thrown to one side of the street and the heavy portion of the chassis and Dawson being thrown to the front and to the curb on the opposite side of the street —a distance of seventy-five feet; that Dawson was rendered unconscious by reason of the collision; that both his legs were broken above the knees, his right arm sustained a compound fracture above the elbow, and the back of his skull was crushed; that although the emergency brakes on the street-car were operated most effectively, the street-car traveled after the collision for a distance of between 180 and 220 feet before it was stopped.

Appellant first advances the point that the evidence proves the contributory negligence of Dawson in failing to yield to the defendant the right of way across the street intersection in accordance with the provisions of a local city ordinance which gave such a preference to street-cars over other vehicles.

[2] It is settled law that the defense of contributory negligence is an affirmative one, and that the burden of establishing such a defense rests upon the defendant. (*Bidwell* v. *Los Angeles etc. Ry. Co.,* 169 Cal. 780 [148 Pac. 197]; *Zibbell* v. *Southern Pacific Co.,* 160 Cal. 241 [116 Pac. 513]; *Schneider* v. *Market Street Ry. Co.,* 134 Cal.

482 [66 Pac. 734]; *Hutson* v. *Southern California Ry. Co.,* 150 Cal. 701 [89 Pac. 1093].) It is also well established that the contributory negligence of a plaintiff can be said to exist in those cases only where no deduction or inference from the evidence other than the plaintiff's negligence can be drawn by the jury, and that even where the facts in the case are clear and undisputed, "if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury." It is only where the deduction to be drawn from the evidence is inevitably that of plaintiff's negligence that the court is authorized to declare the presence of contributory negligence on the part of the plaintiff and thereupon withdraw the case from the jury. (*Johnson* v. *Southern Pac. R. R. Co.,* 154 Cal. 285 [97 Pac. 520]; *Seller* v. *Market Street Ry. Co.,* 139 Cal. 268 [72 Pac. 1006]; *Herbert* v. *Southern Pacific Co.,* 121 Cal. 227 [53 Pac. 651]; *Zibbell* v. *Southern Pacific Co.,* 160 Cal. 237 [116 Pac. 513].)

[3] With reference to the effect of the provisions of the ordinance which gave the right of way at the intersection to the defendant, the law appears to be well stated in the syllabus of the case of *Virginia Railway & Power Co.* v. *Wellons,* 133 Va. 350 [112 S. E. 843], as follows: "Where a street car had the right of way under a city ordinance, it is the duty of an automobile driver to yield if, when he started across the tracks, the relative position of the two vehicles was such that a reasonably prudent man would have foreseen that a collision was likely to occur unless one or the other stopped."

To the same effect, see *Virginia Railway & Power Co.* v. *Hill,* 120 Va. 397 [91 S. E. 194].

[4] The questions, then, to be considered are whether from the evidence reasonable minds might draw different conclusions upon the question of plaintiff's negligence, and whether as plaintiff started across the intersection, as a reasonably prudent man he should have foreseen that a collision was about to occur unless either the truck or the street-car was stopped. The evidence of the witnesses produced by plaintiff showed that the street-car was traveling at from four to six times the speed at which the truck was traveling after it entered the intersection; that the distance from the curb line of each of the intersecting streets

to the center of the street was approximately twenty-six feet. It is therefore apparent that at the time the truck entered the intersection the street-car was from 104 to 156 feet away from the center of the intersection. The evidence further shows that Dawson was habitually a careful man, and that on this occasion as he approached the intersection he slackened the speed of the truck and looked in the direction from which the street-car was coming. Touching upon the law affecting a situation of such a character, it is said in the case of *Clark* v. *Bennett*, 123 Cal. 275, 278 [55 Pac. 908, 909]: "It cannot be said that a person is guilty of contributory negligence merely because he attempts to cross a street railway when a car is approaching. If that were so, he could never attempt to cross such a track in the crowded parts of a city where there is practically always an approaching car; and in such case, as street cars go at a comparatively slow rate of speed and are quickly stopped, the question of negligence would depend upon the proximity or remoteness of the car, and upon all the other circumstances surrounding the occurrence. In such a situation the traveler cannot be held to exercise the very highest prudence and judgment; it is sufficient if he exercises that degree of care and prudence and good sense which men who possess those qualities in an ordinary or average degree exercise."

In the case of *Scott* v. *San Bernardino Valley etc. Co.*, 152 Cal. 604 [93 Pac. 677], the principle is discussed by the court and the conclusion reached that in a situation resembling that presented in the instant case the question of whether the plaintiff was guilty of negligence which contributed proximately to the happening of the accident is one for the determination of the jury. And to the same effect, see the following cases: *Schneider* v. *Market Street Ry. Co.*, 134 Cal. 482 [66 Pac. 734]; *Kernan* v. *Market Street Ry. Co.*, 137 Cal. 326 [70 Pac. 81]; *Hoff* v. *Los Angeles Pacific Co.*, 158 Cal. 596 [112 Pac. 53]; *Runnels* v. *United Railroads*, 175 Cal. 528 [166 Pac. 18]; *Commonwealth Bonding etc. Co.* v. *Pacific Electric Ry. Co.*, 42 Cal. App. 573 [184 Pac. 29]; *Mann* v. *Scott*, 180 Cal. 550 [182 Pac. 281]; *Carbaugh* v. *White Bus Line*, 51 Cal. App. 1 [195 Pac. 1066].

It is therefore manifest that in the circumstances of the instant case the question of Dawson's contributory negli-

gence was one exclusively for the jury to determine; and consequently that the point presented by appellant with reference thereto cannot be sustained.

[5] It is next urged by appellant that the trial court erred in refusing to instruct the jury in effect that in the event the jury found certain stated facts were true, if Dawson operated his truck within the intersection of the two streets at a greater rate of speed than ten miles per hour, he was guilty of negligence. However, no foundation in fact existed upon which to base such requested instruction. No witness testified that Dawson was driving his truck at such a rate of speed within the intersection. Moreover, without going into details of the provisions of section 22 (a) of the Vehicle Act (Stats. 1919, p. 220), upon which appellant relies as authority for the requested instruction, on an examination of the statute it appears that, among other things, it provides for a given rate of speed for vehicles "in traversing any steam, *electric or other railway crossing* at grade," provided that theretofore the governing body of the municipality wherein such "railway crossing" is situate shall have placed and maintained "warning signs," etc. The attention of this court is not directed to any evidence in the case touching the condition as to the placing and maintaining of the "warning signs" mentioned in the statute; nor is such condition covered by the instruction which was refused by the trial court. Assuming, without deciding, that the statute to which reference has been had is applicable to the situation here presented, it is clear that if it applies in one part it should also apply in the other; and, consequently, if the rate of speed is controlled by such statute, the regulation requiring "warning signs" is also a condition which must be met. For such reasons we think that the instruction was properly refused.

[6] Appellant also suggests error in that the trial court refused to give an additional instruction that "if you also find from the evidence that William E. Dawson was operating said truck at a speed of fifteen miles per hour or twenty-two feet per second, he was guilty of negligence," etc. The proposed instruction was properly refused for the reason that it is indefinite as to place or location at which it might be inferred that the truck was being operated.

[7] Appellant predicates error in that the trial court instructed the jury that "it was the duty of the defendant's motorman to sound his gong when approaching Thirteenth street (one of the intersecting streets) so as to give notice to persons desiring to cross said street of the approach of the street car, . . . "

As such duty was required by an ordinance of the municipality in which the street-car was being operated, the instruction was a proper one to be given to the jury. (*Driscoll* v. *Market Street Cable Ry. Co.*, 97 Cal. 553, 565, 133 Am. St. Rep. 203, 32 Pac. 591]; *Schneider* v. *Market Street Ry. Co.*, 134 Cal. 482, 486 [66 Pac. 734].)

[8] It is next urged by appellant that error was committed by the trial court in admitting, over defendant's objection, evidence of habit of Dawson as to care in driving his truck. It is not claimed that under no circumstances is such evidence admissible; but because of the fact in the instant case that there were eye-witnesses to the accident, it is insisted that "there was no justification in law for admitting the evidence referred to"—citing *Wallis* v. *Southern Pacific Co.*, 184 Cal. 662 [15 A. L. R. 117, 195 Pac. 408]; 10 R. C. L., sec. 127, p. 955; 6 Thompson on Negligence, sec. 7140; 1 Elliott on Evidence, sec. 172.

It is manifest that in the instant case the particular phase of the inquiry was directed, not to Dawson's habit regarding the driving by him of an automobile over a street intersection, but was directed particularly to what he actually did on the occasion in question. His habit may have been to be very careful at such times, and yet on the occasion under consideration he may have shown the greatest carelessness. But, however that may have been, the testimony as to Dawson's habit apparently coincided with the testimony of the witnesses introduced by plaintiff regarding Dawson's conduct at the time the accident occurred. And while evidence of his habit may have added weight to the testimony given in his behalf, the language used by the court in *Wallis* v. *Southern Pacific Co.*, 184 Cal. 662, 665 [15 A. L. R. 117, 195 Pac. 408], to wit, "if the fact of the existence of habits of caution in a given particular has any legitimate evidentiary weight, the party benefited ought to have the advantage of it for whatever it is worth, even against adverse eye-witnesses; and if the testimony of the eye-witnesses is

in his favor, it would be at least a harmless cumulation of evidence to permit testimony of his custom or habit''— would seem to indicate that the error, if any, was not prejudicial to defendant's substantial rights.

[9] It is also contended by appellant that the trial court erred in permitting certain .witnesses to testify that at or immediately preceding the time of the accident the streetcar was traveling at a speed' "faster than the ordinary rate,'' and that the street-car "was going the faster of the two vehicles.'' No authorities are cited by appellant to sustain its position. On the other hand, the authorities are numerous in principle which uphold the admissibility of such evidence. (*Overtoom* v. *Chicago & E. I. R. Co.*, 181 Ill. 323 [54 N. E. 898]; *Illinois Central R. R. Co.* v. *Ashline,* 171 Ill. 313 [49 N. E. 522]; *Ottofy* v. *Mississippi Valley Trust Co.*, 197 Mo. App. 473. [196 S. W. 428]; *Johnsen* v. *Oakland, S. L. & H. E. Ry. Co.*, 127 Cal. 608 [60 Pac. 170]; *Scragg* v. *Sallee,* 24 Cal. App. 133 [140 Pac. 706]; *Cargall* v. *Riley,* 209 Ala. 183 [95 South. 821]; *Schultz* v. *Starr,* 180 Iowa, 1319 [164 N. W. 163]; *Parker* v. *Boston & M. R. R.,* 84 Vt. 329 [79 Atl. 865].)

[10] Error is also predicated on the fact that the trial court overruled an objection to a question propounded to a witness as to where the accident took place, and in connection therewith allege prejudicial misconduct committed by the judge of the trial court in commenting on the knowledge of such witness.

The bill of exceptions herein shows that after the witness had stated that at the time the accident occurred she was sitting on a side seat "on the front end of the car on the left-hand side of the car next to the motorman; . . . the very front seat,'' she was asked the question as to where the collision took place, to which question she answered: "Well, I would say, from the appearance of all things, that the radiator, the front end of the truck, was on the street-car track. The whole front part would be on the track and the rear end would be about where the pimple, the traffic pimple, would be; just about the middle of the street crossing.''

Before the question was answered, the defendant interposed a general objection and included therein the further specification that no foundation had been laid for the ques-

tion. In response thereto, the judge of the trial court stated in effect that he thought the required foundation would "develop"; that "it was obvious that a person on a street car would know where a collision took place. She might feel it, under the conditions she testified to." On cross-examination the witness stated: "The first I knew anything of the collision was when the two cars hit. I did not see them hit or come together, but I felt it. If I remember correctly I was looking at my sister, back up toward Twelfth street, just before the time of the impact. Q. You have explained on direct examination that the front of the truck was across the track and the rear of the truck was about what you described as the pimple there? A. I say I would judge from the position of the way that the truck was hit, that that would be where the truck would be. I did not say I saw it there. I did not see the truck hit."

While perhaps the remark made by the judge, to the effect that because the witness was on a street-car at the time the collision occurred she would know where it took place, was not a correct deduction, the cross-examination to which reference has been had satisfactorily established that her answer as to where the collision occurred was not based upon her actual knowledge derived from witnessing the collision, but was from what she felt at the time and from what she afterward saw of the accident. Her testimony, therefore, in regard to the place where the accident took place, was of no particular value one way or the other. Other witnesses who clearly saw the collision testified fully regarding its location and fixed it at approximately the position indicated by the testimony of the witness to which objection was made. In such circumstances, we think that the comments made by the trial judge regarding the testimony of the witness could not have affected the verdict.

[11] It appears that one of the witnesses produced by the defendant at first was uncertain in her testimony as to which direction was east and which direction was west, and was likewise unable to state whether the accident occurred on the east side or on the west side of the "wart" in the center of the intersection. In response to a question asked of her by the judge of the trial court as to whether she knew "the east and west," the witness replied, "I do,

sometimes.'' Whereupon the judge rejoined, ''I don't see how you find your way home. Broadway runs east and west, but Thirteenth street north and south.'' The witness being thus instructed, then testified as to the direction in which the street-car was moving and as to the place where the accident occurred. Appellant now assigns as prejudicial error the remark made by the judge that ''I don't see how you find your way home.'' But in view of the fact that no objection was taken to the remark either at the time it was made or at any time during the trial, nor any exception noted thereto, the point is not available on appeal.

In the case of *People* v. *Ferrara,* 18 Cal. App. 271, 274 [122 Pac. 1089, 1090], the court said: ''As to the claimed misconduct of the court, no objection having been taken to the remark at the time, the possibility of injury to the defendant cannot now be considered. (*People* v. *Walker,* 15 Cal. App. 400 [114 Pac. 1009]; *People* v. *Mayes,* 113 Cal. 618 [45 Pac. 860]; *People* v. *Davenport,* 17 Cal. App. 557 [120 Pac. 451]; *People* v. *Ruef,* 14 Cal. App. 576 [114 Pac. 48, 54].)''

However, in all probability the remark was considered as a mere pleasantry and of no importance as affecting any issue before the court; at any rate, it was of trivial consequence. Moreover, at the close of the case the jury was instructed by the court that it should ''not consider anything that may have been said by the court, nor any act of the court during the progress of this trial, as indicating any opinion of the court as to what are or not the facts in the case, or what has or has not been established, or whether the witness who is testifying is testifying truthfully or not. Those are matters left entirely to your discretion, and the court has not by any word or action intended to convey to you any information or impression as to the court's opinion in these matters of fact. Consequently, if you have in your mind any word that you think expressed some opinion of the court on matters of fact, you should dismiss it from your mind as improper of consideration.''

It is therefore manifest that the defendant was in nowise prejudiced in its substantial rights by reason of the incident to which reference has been had.

[12] It is also contended by appellant that: "The court erred in overruling the objections of defendant to and in refusing to grant the motion of defendant to strike from the record testimony of plaintiff concerning whether or not defendant had ever paid her any compensation for loss sustained."

[13] We are unable to see any error in connection with the matter to which appellant has referred, nor are we able to perceive in what manner such evidence could prejudicially affect the defense to the action.

Appellant presents the further point that "evidence of pecuniary worth of deceased and consequent damage not sufficiently established to justify verdict."

The evidence showed that Mr. Dawson's "hearing and eyesight were both good; prior to his death he was in perfect health, every way; he was earning $120 a month at the time of his death. He was a good husband and made a good living, and was always tending to his own affairs"—also, that had he lived for the full term of his life expectancy, he would have earned the sum of $19,396.80. In such estimate, no account was taken of the loss by plaintiff of the society, comfort, support, and protection which she would have received but for the negligence of the defendant. In the circumstances we think Mr. Dawson's "pecuniary worth" was sufficently established to justify the verdict in the sum of $10,000. [14] The rule is established by a host of authorities that a verdict cannot be disturbed on the ground that it is excessive, unless it is "so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury." (*Hale* v. *San Bernardino etc. Co.,* 156 Cal. 713 [106 Pac. 83].) No such conditions are even suggested by appellant as having been present in the instant case.

[15] Appellant's final attack is based upon the alleged insufficiency of the evidence to support the judgment.

From what heretofore has been stated herein the jury was warranted in concluding that the defendant was guilty of negligence and that Mr. Dawson was free from negligence proximately contributing to the happening of the accident. Those are the ultimate essentials in the maintenance of an action of this character. It is clearly outside the province of this court to consider the evidence for the purpose of

determining its weight as to any issue in the pleadings, or in whose favor the evidence as a whole preponderated.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 21, 1927.