No. 26,577.
No. 26,667.

Anise Hamilton, *Appellee*, v. L. D. DeCamp and The Topeka Railway Company, *Appellants*.

### SYLLABUS BY THE COURT.

1. Street Railroads—*Action for Injuries—Evidence—Rate of Speed.* An estimate of the speed of a street car is held not to have been inadmissible because based in part upon the noise it made.

2. Same—*Action for Injuries—Contributory Negligence—Evidence.* In an action against a street railway company and the driver of an automobile, brought by a passenger in the automobile—a woman—who was injured by a collision between it and a street car, contributory negligence on the part of the plaintiff is held not to have been conclusively established by findings that as the automobile approached the street on which the car track was located she did not look or listen for a street car or take other precaution for her own safety, but trusted entirely to the driver, there being evidence of these additional facts: she was in the rear seat; side curtains were up which had isinglass strips, but which obstructed her view to a certain extent; she did not know the automobile was near a street-car track; she understood she was being taken to her destination by a different and direct route on which there were no car tracks; and she had seen nothing to arouse any distrust of the driver's care.

3. Same—*Action for Injuries—Inconsistent Findings.* A finding of the jury is held not to be in conflict with other findings.

4. Same—*Instructions.* Objections concerning instructions are held not to be well taken.

5. Same—*Trial Generally.* Various trial rulings are held not to have been erroneous.

Appeal from Shawnee district court, division No. 2; Otis E. Hungate, judge *pro tem.* Opinion filed April 10, 1926. Affirmed.

*Thomas F. Doran, Clayton E. Kline,* both of Topeka, *M. F. Cosgrove,* of Liberal, *W. C. Harris* and *Owen S. Samuel,* both of Emporia, for the appellants.

*J. J. Schenck* and *C. P. Schenck,* both of Topeka, for the appellee.

The opinion of the court was delivered by

Mason, J.: L. D. DeCamp, a real-estate agent, was taking Mrs. Anise Hamilton, a prospective customer, in his automobile to show

Evidence, 22 C. J. p. 568 n. 70. Motor Vehicles, 28 Cyc. p. 47 n. 20; L. R. A. 1915B, 953; 18 A. L. R. 309; 20 A. L. R. 1026; 26 A. L. R. 1428; 2 R. C. L. 1207. Street Railroads, 36 Cyc. pp. 1535 n. 46, 1555 n. 48, 1560 n. 74, 1626 n. 44, 1637 n. 99, 1647 n. 50. Trial, 38 Cyc. pp. 1707 n. 98, 1925 n. 72, 1930 n. 2, 1933 n. 39.

her a house on the west side of Harrison street just south of Douthitt avenue, in Topeka. As the automobile was going south on Harrison a collision occurred with a street car coming east on Douthitt. Mrs. Hamilton brought this action against the street-car company and DeCamp, recovering a judgment against them, from which each separately appeals.

1. A witness living on the west side of Harrison street a little south of Douthitt saw the collision from the doorway of her house and testified that in her judgment the street car was going about twenty-five miles an hour. The company complains of the admission of this testimony on the ground that the estimate was based on the sound made by the street car and is therefore entirely unreliable. The witness did give an affirmative answer to a question asked on cross-examination whether she based the estimate largely on the sound. But to the question, "Then you are going largely by the sound of the street car, how fast it was going?" she answered, "And what I saw, I mean." She also said: "I was looking for the street car. I heard it coming. I was going to take one to go uptown on. I was looking up to the street car, and saw this car as it passed." The objection made goes rather to the weight than to the admissibility of the evidence. We cannot undertake to say that the sound may not be of some aid in estimating the speed of a street car, particularly if it has a flat wheel, a matter concerning which there is no evidence either way. The company contends that there was no other evidence of the speed of the street car in miles per hour, and that that already referred to was inadequate. Another witness, however, said it seemed to her to be going twenty miles or more.

2. The company contends it was entitled to a judgment upon the special findings, on the ground that they showed such contributory negligence on the part of the plaintiff as to prevent her recovery. The questions and answers relied upon in support of this contention read:

"How far north of the north sidewalk line on the north side of Fifteenth street [another name for Douthitt] was the automobile in which the plaintiff was riding when she could have first seen the street car approaching from the west on Fifteenth street? About 75 feet.

"In what distance could the defendant DeCamp, who was driving the automobile in which the plaintiff was riding, have stopped the same at the speed he was going when he was about to enter the intersection of Fifteenth and Harrison, had he applied his brakes to their full capacity? About 30 feet.

"Did the plaintiff look or listen for a street car as the automobile in which she was riding approached Fifteenth street? No.

"Did the plaintiff trust entirely to the driver of the automobile and omit to look or listen or take any precautions for her own safety as she approached the intersection of Harrison and Douthitt avenue or Fifteenth street? She did.

"Did the plaintiff at any time, as she approached said intersection of Fifteenth street or Douthitt avenue and Harrison street, give any warning whatever to her driver of the approach of the street car, or request him to slow down or stop before going upon the track of the street railway company? She did not.

"What is the distance between the north line of the sidewalk on the north side of Douthitt avenue from a point in the center of Harrison street south to the north rail of the street car track? About 26 feet."

The question whether as a matter of law the exercise of ordinary prudence required the plaintiff to keep an outlook for the street car depends upon conditions, some of which are not shown in the findings quoted. There was evidence tending to show the following facts, which must be treated as proved and be taken into account: The plaintiff did not know the automobile was approaching a cross street on which there was a street-car track—did not know there was a street-car track anywhere near. She did not even know De-Camp was taking her to see the house on Harrison street, but understood they were on their way directly from some place on Morris avenue to a bank in a different direction. She said, "I did not know there was any street-car track on the street we was going to town." She did not know she was on Harrison street, or on Fifteenth. She was in the rear seat. Side curtains were up, and while they had isinglass strips, they obstructed her view to a certain extent. The correctness of the last statement is challenged by the company, but it is shown by what appears in the counter abstract to be a literal extract from the transcript, and the transcript itself cannot be found. She had seen nothing in the driving of DeCamp to arouse any distrust in his care or skill as a driver. She had never ridden in automobiles very much and was not acquainted with their speed.

There is a recognized difference between the conduct required of a driver in crossing a street-car track and that necessary in crossing a railroad track, although in either case he must keep an outlook for approaching cars. (*Ogden v. Wilson,* 120 Kan. 269, 271, 243 Pac. 284.) A distinction may well be made between street-car tracks and railroad tracks as to the extent of the duty of a passenger in an automobile to watch for cars or trains. The matter, however, need not be further gone into here. Each case of the present character must to a large extent be determined upon its own peculiar facts. "It is impossible for courts to lay down fixed rules by

which to determine just when and under what circumstances an automobile should be driven from the rear seat. Each case must rest upon its own facts." (*Irwin v. McDougal*, [Mo. App.] 274 S. W. 923, 925.) "The duty of the passenger to look is one which is dependent on the circumstances. The driver of the automobile is bound to keep a practically continuous outlook while driving, but no such duty is imposed on the passenger. In the absence of knowledge of danger or of facts, which should give him such knowledge, a passenger or guest may properly rely on the driver to attend to the driving of the automobile. The primary duty of care for the safe operation rests upon the driver. The passenger, however, is not relieved from the exercise of all care for his own protection, but the amount of care required of a passenger necessarily varies with the circumstances of each case." (*Coughlin v. Rhode Island Co.*, 44 R. I. 64, 67.) A passenger in an automobile is bound to take whatever steps, if any, are reasonably necessary for his own protection, but his duty "to look out for possible dangers ahead is not precisely the same as that of the driver." (*Cooper v. Railway Co.*, 117 Kan. 703, 709, 232 Pac. 1024. See Huddy on Automobiles, 7th ed., §§ 820, 823, 824.) "One sitting in a back seat is not in a situation to maintain as adequate a lookout as the driver or other person in the front seat, especially when the curtains are down. If he looks out in front, his view is narrowed, so that he is not likely to see far on either side; if he looks through the transparent substance inserted in the curtains, he must adjust his position to see, and would be likely to experience some difficulty in fixing his relations with surrounding objects." (*Glanville v. Chicago R. I. & P. R. Co.*, 190 Ia. 174, 178.)

We hold that, in view of the circumstances stated, the question whether the plaintiff was guilty of contributory negligence was one of fact for the jury. We think it unnecessary to review the cases bearing on the duty of passengers or guests in an automobile approaching a street-car crossing. They are collected in various notes. (18 A. L. R. 309, 338; 22 A. L. R. 1294, 1300; 20 A. L. R. 1026; 26 A. L. R. 1428.) A number of such cases are found in additions to the note in 22 A. L. R. in the blue book of supplemental decisions.

3. The company also contends that another finding of the jury, shown by the following question and answer, is inconsistent with those already stated, and contrary to all the evidence:

"Did the plaintiff and the driver of the automobile each have an opportunity to observe the approach of the street car in time for the driver to stop the automobile and thus have avoided the accident and injury, had the driver

tried to do so, or had the plaintiff warned the driver of the approach of said street car? They did not."

The answer must of course be given any construction it will reasonably bear in order to reconcile it with the other findings. We think it is fairly interpretable as meaning, not necessarily that it would have been physically impossible for the plaintiff to have seen the street car soon enough for her to give the driver warning in time for him to stop the automobile before reaching the car track, but that she had no opportunity to do so by the exercise of mere ordinary prudence. So interpreted, the answer was not without support in the evidence, as already shown.

4. The company complains of the giving of an instruction qualifying the obligation of a passenger in an automobile to look out for approaching cars at street intersections by the words "when he or she is aware that there is a street-car track located thereon"; and of the refusal to give an unqualified instruction that it was the duty of the plaintiff to look and listen for a street car as the automobile approached Douthitt avenue. We think neither ruling gives basis for a reversal, upon grounds already sufficiently indicated.

5. It remains to consider a number of objections to the judgment, made by defendant DeCamp. He interprets the finding last above quoted as acquitting him, as well as the plaintiff, of negligence in failing to observe the approach of the street car. The question was whether the plaintiff and the driver each had opportunity to see the street car in time so that the accident might have been prevented. The answer was, "They did not." This was responsive to the question as it was stated, and we take it to mean not that neither of the two had such opportunity, but that it was not true that both had.

He complains of the admission of evidence introduced by the company of a city ordinance giving street cars "the right of way on the track of said company and the driver of any vehicle on the track or by the side thereof." His objection is that the jury may have inferred that he had no right whatever to be on the track. In view of the instructions given, we think that possibility so improbable as to be negligible.

He also contends that the evidence did not justify finding him guilty of negligence and the plaintiff's own testimony showed the contrary. The plaintiff's testimony was that she was not aware of his negligence. His own statements on the stand and those of

other witnesses warranted a finding against him. To the question asking the proximate cause of the collision the jury answered, "Negligence on the part of the defendants." This was not such an answer as should have been given, but as there was no request to have it made more definite, an objection at this time is unavailing.

He contends that the instructions were too favorable to the street-car company. Inasmuch as the trial court rendered judgment against the company, which is to be affirmed, we do not see how its codefendant could have been prejudiced by error in its favor, although it is suggested the jury may thereby have been influenced to his disadvantage. The instructions asked by him and refused, so far as necessary to a fair consideration of the case, we think were sufficiently covered by the court's charge.

The judgment is affirmed.