[Civ. No. 4151. Third Appellate District.—June 13, 1931.]

HELEN P. BENNETT, a Minor, etc., Respondent, v. CENTRAL CALIFORNIA TRACTION COMPANY (a Corporation), Appellant.

Butler, Van Dyke, Desmond & Harris for Appellant.

Albert E. Sheets and J. Q. Brown, Jr., for Respondent.

PLUMMER, J.—The jury in this action awarded the plaintiff the sum of $47,000 as damages for injuries sustained by her when a street-car belonging to the defendant collided with an automobile in which the plaintiff was riding as a guest. The verdict was reduced to the sum of $25,000 by the trial court and judgment entered for that sum. From this judgment the defendant appeals.

The record shows that the collision between a street-car belonging to the defendant and the automobile in which the plaintiff was riding occurred at the intersection of Fifteenth and X Streets in the city of Sacramento, at approximately 9 o'clock P. M. The evening was clear and the intersection was well lighted. Fifteenth Street runs northerly and southerly, and X Street easterly and westerly. The automobile in which the plaintiff was riding was traveling. in a southerly direction, and the street-car with which it came into collision was traveling eastward. On the evening in question the plaintiff and four other young people left the Y. W. C. A. building in Sacramento, where the plaintiff resided, in a five-passenger "Pontiac" sedan auto-

mobile, to attend a dance at the William Land Park club-house—a club-house situated a short distance south of the city of Sacramento. The plaintiff seated herself on the right-hand side and in the rear seat of the automobile. To the left of the plaintiff was a Miss Elizabeth Bivens. The automobile was driven by a young man by the name of Walter Thorr. At his right was a Miss Schilling and at her right a Mr. Aungst. The automobile proceeded west on M Street to Fifteenth Street, turned south on Fifteenth Street and traveled southerly on that street until it reached the intersection of Fifteenth and X Streets. The defendant maintains a double track on X Street, on which it propels street-cars carrying passengers, and also during certain hours, cars carrying freight. The car belonging to the defendant which came in collision with the automobile in which the plaintiff was riding was being propelled easterly on the southerly line of tracks maintained by the defendant. The collision occurred at or near the center of the inter-section. The momentum of the street-car carried the auto-mobile a distance of 97.5 feet and practically demolished it. Both Fifteenth and X Streets are 48 feet in width. The exhibits and the testimony show that a street-car traveling easterly on X Street can be seen from a point on Fifteenth Street approximately 150 feet north of the intersection of Fifteenth Street with X Street, and likewise, that a motorman propelling a street-car easterly on X Street can see an auto-mobile approaching from the north on Fifteenth Street from a point approximately the same distance west of the Intersection of X and Fifteenth Streets. There is no build-ing on the lot at the northwest corner of the intersection of the two streets.

Upon this appeal it is contended by the appellant, first, that the court erred in permitting the plaintiff to intro-duce certain testimony as to the speed of the street-car; second, that the evidence is insufficient to support the ver-dict; third, that the evidence shows that the negligence of the driver of the automobile was the sole and proximate cause of the collision, and fourth, that the amount of damages awarded is excessive. The answer of the respondent to these contentions is that the street-car was being propelled at a negligent rate of speed, and in excess of 20 miles per hour, the speed limit fixed by ordinance of the city of Sacramento;

that the motorman failed to keep a lookout for approaching automobiles; that the testimony to which we shall hereafter refer was properly admitted; and that the injuries sustained by the plaintiff show that the award was and is not excessive. The testimony introduced on the part of the plaintiff is to the effect that preceding the collision the automobile was being driven southerly on the right-hand side or westerly side of Fifteenth Street; that it was proceeding through the intersection at a speed of from 10 to 15 miles per hour. Mr. Thorr testified that when he first saw the street-car just outside the intersection it was traveling at a speed of from 30 to 35 miles per hour. The testimony of the plaintiff was to the same effect. The testimony of Thorr also was to the effect that upon perceiving the approach of the street-car he swerved the automobile to the left. In the collision which followed Miss Schilling and Mr. Aungst lost their lives. The motorman of the street-car testified that he at no time saw the automobile until he had stopped the street-car and opened one of the car windows. This, after the street-car had carried the automobile a distance of a trifle over 97 feet from the point of collision. The occupants of the automobile also testified that no gong was sounded nor warning given of the approach of the street-car.

On the part of the appellant there was testimony introduced that the automobile in which the plaintiff was riding was being propelled southerly at a very high rate of speed, and much attention is given by appellant to the testimony, from which it might be concluded that the automobile driver was extremely careless and negligent in the operation of the machine, but with this phase of the question, although it is argued at length in the briefs of counsel, we are not concerned upon this appeal for the simple reason that if there is sufficient testimony in the record supporting the judgment, and accepted by the jurors, it is not for the court to say that the jury should have accepted and acted upon the testimony conflicting therewith. As we have stated, the night was clear; the intersection where the collision occurred was well lighted; both the driver of the automobile and the motorman on the street-car could have seen each other at a distance approximately 150 feet from the intersection; what one could see the other

could see. The testimony of the driver of the automobile is to the effect that he did not see the street-car until just preceding its entry into the intersection. The motorman testified that he did not see the automobile until after he had stopped his car a trifle over 97 feet from the point of collision. The motorman did testify that the force of the collision jarred him from the stool on which he was sitting. This, however, did not affect his failure to see the automobile during the intervening distance which we have mentioned from the point of possible vision to the point of collision.

Appellant stresses the point that while the witnesses for the plaintiff testified that preceding the collision the car was traveling southerly on the right-hand side of Fifteenth Street, the marks made by the automobile upon the intersection, after the collision, indicated that it was on the easterly side of the "button" located at the center of the intersection. Respondent's contention is that the force of the collision by the rapidly approaching street-car lifted the automobile some distance and prevented it making any marks upon the pavement for a few feet. The testimony of the driver of the automobile also is called to our attention, that he swerved the car to the left in the hope of avoiding the impact. Be this as it may, we do not regard the exact location of the automobile on Fifteenth Street as having any particular bearing upon the issues involved herein, for the simple reason that there was nothing upon Fifteenth Street requiring the automobile in which the plaintiff was riding, to be driven southerly on the right-hand side thereof, other than the California Vehicle Act, which requires it to be so driven. Nor can it be said that the alleged negligence of the defendant is in anywise affected or excused by reason of whether the automobile was actually on the right-hand side, on the left-hand side or the medial line of Fifteenth Street at the instant of the collision.

As the main force of appellant's argument relative to errors in the admission of testimony is directed against that given by the witness Checchetini we set it forth somewhat at length:

"Q. Where do you live? A. At 2320—15th Street in Sacramento. Q. How long have you lived there? A. I have lived in Sacramento all my life; I have lived there

over two years. I am now City Fireman, Fire Department of the City of Sacramento; have been such 5½ years. My employment previous to that time was with the Zellerbach Paper Company for 3 years; prior to that I worked for the Western Pacific Railroad in its shops, for 6½ years. Q. Have you observed these cars of the Traction Company on X Street as they traveled back and forth? A. For 20 years. Q. With the exception of an intervening lot, you live on the corner of 15th and X? A. Yes, sir. Q. Have you ridden on street cars as they travel back and forth? A. I ride on these cars every day. Q. Have you ridden on car No. 103, the car involved in the collision on the night of February 14th? A. Many times. Q. Have you watched the cars going past the intersection? A. Well, I have watched it for days before. Q. Now, on the night of February 14th, what were you doing at the time of the accident? A. Well, I had just gone to bed and heard a big crash. Q. That is, you had gone to bed in your house? A. Yes, sir. Q. And heard a crash? A. An awful crash. Q. By the way, had you heard anything previous to the crash? A. Yes, sir. Q. Could you tell from the sound whether or not, at what rate of speed the car was going? A. Yes, sir. Q. You say you could tell from hearing how fast the car was going? A. Yes, sir. Q. How fast? Mr. Butler: Now, we object to that as calling for conjecture and opinion. I don't know of any rule by which speed can be ascertained from sound. The Court: I think what he could do would be to testify whether or not it was going, from sound, at a high rate of speed, or moderate or slow. Mr. Sheets: Q. Could you tell in that way how fast the car was going? The Court: I only suggest the question. The question I asked you, could you tell from the sound of the car as you heard it that night? A. I know from the sound of the car it was going at an awful speed. Mr. Butler: Just a moment; we would like to interpose an objection to that. The Court: Yes; the objection will be sustained and that part of the answer stricken out. The Court: Now, just answer this question in a limited way, just the way it is asked: Could you tell whether or not—and I am not asking you how fast it went now—I just want to know whether or not you could tell whether it was going very slowly, whether it was going moderately,

whether it was going rapidly? Witness: Well, I would say it was going very rapidly, very fast.'' The witness then stated that after the crash he stepped to the window and saw the street-car just as it was coming to a stop.

In support of its contention that the admission of this testimony was error, appellant relies upon the cases of *Diamond* v. *Weyerhaeuser*, 148 Cal. 540 [174 Pac. 38], and *Rosander* v. *Market St. Ry. Co.*, 89 Cal. App. 710 [265 Pac. 536], where similar testimony was considered other than as to the question of sound. These cases, however, we think are readily distinguishable from the facts of the case with which we are dealing. In the Diamond case the plaintiff relied for its proof of negligence upon speed alleged to be in excess of that fixed by a municipal ordinance, the only testimony in support thereof being that the car was going very fast, or at a good speed, etc. This is illustrated by the following excerpt taken from the opinion: ''Nor looking to the specific affirmation of violation of the ordinance did the evidence sustain the charge that the automobile was being propelled at an unlawful or otherwise excessive rate of speed. The plaintiff testified that the machine was coming very fast; another witness, that its speed was decreasing before it reached the milk wagon, but that it was still going at a good speed. The only other witness who testified for plaintiff on the subject, said that it looked to him as if the automobile was going very fast. These statements are entirely too uncertain to serve as a basis for a finding that the speed was over 20 miles an hour, or that it was in excess of the maximum rate which would be dictated by the demands of ordinary prudence.'' This case does not hold that testimony that a vehicle is moving very fast, is inadmissible; it simply holds that such testimony does not furnish the basis for concluding, when standing alone, that a vehicle is being driven in excess of a certain fixed speed limit.

In the Rosander case the court instructed the jury as follows: ''You are instructed that in considering the weight to be given the testimony of witnesses as to the speed of vehicles involved in the collision, such expressions as 'slow', 'very slow', 'fast', 'very fast', 'speeding', 'crawling' and the like, are merely relative, and their meaning and effect must depend upon the unknown factor of the witnesses'

personal views regarding standards of speed, and such expressions *standing alone* are entirely too uncertain to serve as a basis for any findings that the speed of the vehicle was in excess of or within the rate which would be dictated by the demands of ordinary prudence.'' It will be noticed that both cases rest upon the basis of such testimony, standing alone, being insufficient to sustain a verdict. Neither one of the cases just referred to hold such testimony inadmissible, nor does either one of the cases referred to limit or in anywise seek to modify the ruling announced and adhered to in the case of *Johnson* v. *Oakland etc. Ry.*, 127 Cal. 608 [60 Pac. 170]. We take therefrom the following: ''In view of the fact that they were regular travelers upon this line of cars, and that the schedule and statutory time was 8 miles per hour, there can be no question that the testimony given by these witnesses, to the effect that the car was going very fast and at an unusual rate of speed, was proper evidence to go to the jury, and indeed, the law recognizes the very broad and liberal rule in the reception of opinion evidence of non-experts, as to the rate of speed cars may be traveling. As before suggested, these witnesses had been in the habit of traveling upon this line of road, and had at least made casual observation as to the speed of the car at other times. They were fairly intelligent, and only gave an approximate opinion as to the rate of speed the car was going. The fact that they were passengers upon the car, rather than bystanders, does not bar them from testifying in this regard. The reported cases rejecting the class of evidence here offered are few indeed, while there is an abundance of authority to support its admission.'' (Citing *Thomas* v. *Chicago etc. R. Co.*, 86 Mich. 496 [49 N. W. 547], *Walsh* v. *Missouri Pac. Ry. Co.*, 102 Mo. 582 [14 S. W. 873, 15 S. W. 757], and *Ward* v. *Chicago St. Ry. Co.*, 85 Wis. 601 [55 N. W. 771].)

That the overwhelming weight of authority supports the doctrine just stated will appear from the following citations: In *Dawson* v. *San Diego Elec. Ry. Co.*, 82 Cal. App. 141 [255 Pac. 215, 218], we find the following: ''It is also contended by appellant that the trial court erred in permitting certain witnesses to testify that at or immediately preceding the time of the accident the street car was traveling at a speed 'faster than the ordinary rate', and

that the street car 'was going the faster of the two vehicles.' No authorities are cited by appellant to sustain its position. On the other hand, the authorities are numerous in principle which uphold the admissibility of such evidence.'' (Citing *Overtoom* v. *Chicago & E. I. R. Co.*, 181 Ill. 323 [54 N. E. 898]; *Illinois Central Ry. Co.* v. *Ashline*, 171 Ill. 313 [49 N. E. 522]; *Ottofy* v. *Mississippi Valley Trust Co.*, 197 Mo. App. 473 [196 S. W. 428]; *Johnsen* v. *Oakland, S. L. & H. E. Ry. Co.*, 127 Cal. 608 [60 Pac. 170]; *Scragg* v. *Sallee*, 24 Cal. App. 133 [140 Pac. 706]; *Cargall* v. *Riley*, 209 Ala. 183 [95 South. 821]; *Schultz* v. *Starr*, 180 Iowa, 1319 [164 N. W. 163]; *Parker* v. *Boston & M. R. R.*, 84 Vt. 329 [79 Atl. 865].)

In L. R. A. 1918A, beginning on page 662, is an extended note dealing with the admission of nontechnical testimony. On page 705 the rule is thus stated: ''In order to be admissible, an opinion as to the speed of a street car need not be stated in miles per hour, it being competent merely to state that the car was running at the usual, or at an unusual rate, or that it was going at an excessive rate, or going pretty fast, or that it was going much faster than an automobile going at a certain speed, and even assuming that in such testimony the standard employed for comparison was not sufficiently definite such testimony has been held not to amount to prejudicial error where other witnesses have testified, without objection, to the rate in miles per hour.'' In the case at bar other witnesses testified without objection as to the rate per hour. The citations in support of the rule which we have just stated are too numerous to be set forth herein. The competency of the witness whose testimony we are considering appears to be unquestioned. He had ridden upon street-cars of the defendant company, upon the identical car, a number of times; had lived in close proximity to the street-car line for many years, and his line of employment for a number of years gave him an opportunity to consider railroads and their operation. It is further urged, however, that testimony as to speed, based upon sound, is inadmissible. No authorities, however, are cited in support of this contention. Disregarding, for the moment, what we think is common knowledge possessed by every intelligent person, that the sound made by rapidly moving vehicles, differs very materially from that made by

those moving slowly, and that this fact is brought home to everyone who walks the streets of our cities and hears the sound of passing vehicles, a person knows whether they are speeding by or proceeding at a moderate rate, we will cite a number of decisions supporting the ruling of the court in the instant case.

Referring again to the annotation in L. R. A. 1918A, on nontechnical testimony, we find the following rule relative to the admission of testimony based upon sound, where it is said: "Although it is perhaps proper to permit a witness, whose opinion is based upon sound, to tell whether a train was going rapidly or slowly, the courts, with but one exception, have held it improper for witnesses to testify to estimates of the rate of speed of trains and street cars, based entirely upon the sounds arising from their operation." That is exactly the course pursued in the instant case. The witness was allowed to testify as to whether the street-car was moving rapidly or slowly. Thus, in *Van Horne* v. *Burlington ·C. R. & N. R. Co.*, 59 Iowa, 33 [12 N. W. 752], the court said: "Small differences in the speed of a moving train cannot probably be determined by the sound, but we think that the difference between the speed of a slowly-moving and a rapidly-moving train could be distinguished quite easily from the sound by a person in the immediate vicinity. The evidence, we think, was not inadmissible. Such evidence, we think, could not under all the circumstances of the case, be deemed wholly unreliable. What weight the evidence in question was entitled to, under the circumstances shown, it was for the jury to determine."

In *Lake Erie & W. R. Co.* v. *Moore*, 51 Ind. App. 110 [97 N. E. 203], witnesses who lived near a railroad who testified that they were familiar with the surroundings and with the running of trains, and that they had frequently heard the sound of a whistle and bell, were properly permitted to testify as to where a train was when it whistled, and give an opinion of its speed.

In *Nesbit* v. *Crosby*, 74 Conn. 554 [51 Atl. 550], the Supreme Court of Connecticut, considering the question of admitting testimony based upon sound, held that a witness may be allowed to express his opinion as to the speed at which a horse was traveling along a highway, judging from the sound. The clatter of hoofs would indicate whether the

horse was moving slowly or rapidly. Likewise, the clatter of a street-car or of the trucks thereof as it speeds over the joints of a railway, indicate to an intelligent observer whether the car is moving rapidly or slowly.

In *Kuhn* v. *Stephenson,* 87 Ind. App. 157 [161 N. E. 384], the appellate court of Indiana, sitting in banc, held admission of testimony as to the speed· of an automobile, based upon sound, to be proper; citing in support of the ruling a number of cases.

In the case of *Lake Erie & W. R. Co.* v. *Moore, supra,* as reported in 97 N. E., may be found, on page 208, a number of cases cited to support the admission of testimony as to whether a train is running rapidly or slowly, based· upon the sound made by the train.

In the case of *Hamilton* v. *DeCamp,* 120 Kan. 645 [244 Pac. 1057], the Supreme Court of Kansas upholds the rule that estimates of speed of a street-car, based upon the noise it makes, is admissible.

Without quoting therefrom it is sufficient to say that an examination of the following additional cases shows that testimony as to speed, couched in general language such as "very fast", "mighty fast", etc., is admissible: *Missouri Pac. Ry. ·Co.* v. *Hildebrand,* 52 Kan. 284 [34 Pac. 738]; *Davis* v. *Smitherman,* 209 Ala. 244 [96 South. 208]; *Little Rock Ry. Elec. Co.* v. *Green,* 78 Ark. 129 [93 S. W. 752]; *Colorado Midland Ry. Co.* v. *Robbins,* 30 Colo. 449 [71 Pac. 371]; *Shea* v. *Hemming et al.,* 97 Conn. 149 [115 Atl. 686]; *Heidenreich* v. *Bremner,* 260 Ill. 439 [103 N. E. 275]; *McLaughlin* v. *Griffin,* 155 Iowa, 302 [135 N. W. 1107]; *Illinois Central Ry. Co.* v. *Frances, Admx.,* 130 Ky. 26 [112 S. W. 929]; *Anderson* v. *Wells,* (Mo. App.) 261 S. W. 952; *State* v. *United Rys., etc.,* 139 Md. 306 [115 Atl. 109]; *Jones* v. *St. Louis-San Francisco Ry. Co.,* (Mo. App.) 220 S. W. 484; *Burke* v. *Shaw Transfer Co.,* 211 Mo. App. 353 [243 S. W. 449], also, *State* v. *Trimble,* (Mo. App.) 250 S. W. 384; *Ehrman* v. *Nassau Elec. Ry. Co.,* 23 App. Div. 21 [48 N. Y. Supp. 379]; *Macchi* v. *Portland etc. Co.,* 76 Or. 215 [148 Pac. 72]; *Moore* v. *Northern Texas Traction Co.,* 41 Tex. Civ. App. 583 [95 S. W. 652]; *Sears* v. *Seattle Consolidated Street Ry. Co.,* 6 Wash. 227 [33 Pac. 389, 1081]; *Gerbing* v. *McDonald,* 201 Wis. 214 [229 N. W. 860].

In view of the foregoing decisions and the fact that the testimony of the witness that the street-car was moving very fast, does not stand alone in the record, it must be held that the court did not err in permitting its admission, and when all the facts of this case are kept in mind, it is readily perceived that the holding of the court in the Diamond and Rosander cases, *supra*, is inapplicable.

That evidence of speed in excess of that limited by municipal ordinance may be introduced to support the charge of negligence, is the established law of this state. (*Simoneau* v. *Pacific Elec. Ry. Co.*, 166 Cal. 264 [49 L. R. A. (N. S.) 737, 137 Pac. 544] ; *Kenna* v. *United R. R.*, 197 Cal. 148 [239 Pac. 1061] ; *Schneider* v. *Market St. Ry. Co.*, 134 Cal. 482 [66 Pac. 734] ; *Switzler* v. *Atchison etc. Ry. Co.*, 104 Cal. App. 138 [285 Pac. 918].)

In addition to the testimony to which we have referred relative to the speed of the street-car, the distance it traveled after the collision was a proper fact for the jury to consider. The testimony that he did not see the automobile until after he had stopped the street-car and opened one of the windows, constituted an important item for the consideration of the jury in determining whether the motorman had or had not neglected his duty immediately preceding the collision, as well, also, as the fact of his having speeded up the car just before reaching the intersection.

''It is well settled that as a general rule the driver of a street car approaching a street intersection must be vigilant in his watch for automobiles, etc., approaching the tracks, and have his car under control.'' This rule of law is set forth in 28 A. L. R., page 275, in an extended note dealing with automobile and street-car collisions, and is supported by a long list of authorities, so long as to prohibit their listing here. See, also, the annotations found in 46 A. L. R., page 1040, citing cases in support of the rule just stated.

The fact, if it be a fact, that the street-car was not exceeding the speed limit, would not excuse any negligent operation. (*Indiana Traction Co.* v. *Love*, 180 Ind. 442 [99 N. E. 1005] , and note, 28 A. L. R. 278 ; *Carey* v. *Pacific G. & Elec. Co.*, 75 Cal. App. 129 [142 Pac. 97] ; *Tousley* v. *Pacific Elec. Ry. Co.*, 166 Cal. 457 [137 Pac. 31] ; *Johnson*

*et al.* v. *Southern Pac. Co. et al.,* 105 Cal. App. 340 [288 Pac. 81].)

 The record contains sufficient testimony to support the conclusion that the motorman rang no bell and gave no alarm of the car approaching Fifteenth Street; even the testimony of the motorman is deficient in this respect, and such as to warrant the jury in doubting its accuracy, as in answer to a question as to whether he rang the bell, he answered, "Yes, I always do", which immediately raises the inference that the answer was based upon a custom or practice, and not upon the fact that he rang the bell as a warning of the approach of the car before entering the intersection at Fifteenth Street.

That the jury was authorized to conclude that no signal had been given of the approach of the car, based upon the testimony introduced, is supported by the cases of *Jones* v. *Southern Pac. Ry. Co.,* 74 Cal. App. 10 [239 Pac. 429], and *Johnson* v. *Southern Pac. Co.,* 105 Cal. App. 340 [288 Pac. 81].

It further appears from the record that Fifteenth Street is a busy street, which necessarily demanded of all persons using the intersection in question to keep a careful lookout and use due precaution not to injure anyone lawfully thereon, or lawfully entitled to use the same. This was a common duty incumbent upon both the motorman and the driver of the automobile.

 It is further urged that the testimony shows not only negligence on the part of the automobile driver, but that the accident was due solely to his inattention. The testimony to which we have referred, however, if accepted by the jury, is sufficient to show that the negligence of the motorman concurred in, and was at least a joint, proximate cause of the plaintiff's injury. The law is well settled that if the injury is the result of the concurrent tort of two or more persons, all are liable. In support of this statement we need only cite the cases of *Johnson* v. *Southern Pac. Co.,* 105 Cal. App. 340 [288 Pac. 81], and *Switzler* v. *Atchison etc. Ry. Co.,* 104 Cal. App. 138 [285 Pac. 918], where authorities upon this question are cited. The record in this case does not disclose any facts upon which the plaintiff, riding as a guest in the automobile, could be charged with contributory negligence.

It is finally urged that the verdict is excessive, and was the result of passion and prejudice. In this particular it may be stated that the action of the trial court in modifying the verdict cannot be accepted as proof or any indication that the trial court considered the verdict as the result of either passion or prejudice.

An examination of the transcript presents for our consideration a case where one might well consider that no pecuniary compensation would ever make amends for the injuries sustained and suffering endured by the plaintiff, and while the verdict was reduced in a large sum by the trial court, the facts are such as to show that the jury might very well have fixed the damages in the sum that it did, without any passion or prejudice but simply as a result of their deliberate judgment in attempting to make adequate reparation. With this statement we need only to consider the judgment for damages as allowed to stand by the trial court, and add a few excerpts from the testimony, showing that it is not excessive.

At the time of the accident the plaintiff was eighteen years of age, with practically her whole life before her. The record shows that in addition to her body being bruised, and as stated by one of the doctors, her face so injured that he could scarcely recognize the plaintiff, it is shown that the lower jaw bone was broken in three places; the chin bone was splintered; the upper jaw bone in front had been splintered where her lower teeth had been driven into it; two teeth had been driven into the nasal cavity; twelve teeth were lost; four of the upper teeth were driven into the upper jaw bone; the jaw bone had to be wired together; there were several operations; the plaintiff was confined in the county hospital for a short period of time; was then moved to the Sutter hospital where she remained five and one-half weeks; for a long time the plaintiff was unable to masticate food; at the time of the trial the jaws were not entirely lined up; one of the eyes was so injured that an eye specialist testified ''that the defect in her vision cannot be corrected by glasses, and she may recover one or two tenths vision but the balance of the vision will be gone, it will be distorted; she will only be able to see to get around; she might see an object from this side, but she will never be able to use it for reading or work of any kind.'' Dr. Bink-

ley testified that the face of the plaintiff "was almost unrecognizable as a face after the collision". This witness further testified that the gums just sluffed away". And further, "That the lower front teeth were tipped at an angle of probably 45 degrees; they were forced right back, like you take your finger and just move these four teeth as one group; in other words, these teeth were broken off below the roots so they all stuck together by the bone that held them in place." It further appears from the record that the mouth of the plaintiff is twisted and is not in its former shape. Other details of injuries might be set forth, but the foregoing is sufficient to support the judgment for damages.

We need not cite authorities to the effect that where there is a conflict of testimony, the verdict of the jury is binding upon this court. Nor does it matter that this court, if sitting as a jury considering the same testimony, would have concluded that it preponderated in favor of the defendant, and found in its favor.

Finding no sufficient cause to warrant a reversal herein, the judgment of the trial court must be affirmed, and it is so ordered.

Preston, P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 13, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 10, 1931.