[Civ. No. 9175. First Appellate District, Division Two.—January 9, 1935.]

RICHARD BAILEY, Special Administrator, etc., Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation), Appellant.

RICHARD BAILEY, Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation), Appellant.

526

William M. Abbott, Walter H. Linforth and William M. Cannon for Appellant.

George K. Ford and Fletcher A. Cutler for Respondents.

STURTEVANT, J.—Richard Bailey and Minnie Bailey, his wife, were injured when their automobile in which they were riding was struck by a car operated by the Market Street Railway Company. They commenced appropriate actions to recover damages. The defendant answered in both actions and thereafter for the purposes of the trial the ac-

tions were consolidated. A trial was had before the court sitting with a jury. The jury returned a verdict in favor of each plaintiff and from the judgments entered thereon the defendant has appealed.

Shortly after the actions were commenced the deposition of each plaintiff was taken. Thereafter a trial was had and each plaintiff was called as a witness. A second trial was had. During the second trial Mr. Bailey was called as a witness but Mrs. Bailey was not called. However, the deposition of Mrs. Bailey was read in evidence and parts of the testimony of both Mr. Bailey and Mrs. Bailey given at the former trial were also read in evidence. The record discloses numerous conflicts and varying statements. We will not attempt to enumerate them but will endeavor to call attention to such passages as seem to be necessary to a consideration of the points presented by the defendant.

The accident happened at the intersection of Third Avenue and Lincoln Way in San Francisco at about 10 o'clock in the morning of Thanksgiving Day. The day was clear and conditions as to visibility were good. Mr. and Mrs. Bailey resided on Fourth Avenue, a short distance from Lincoln Way. They had resided there for some time and both were familiar with that neighborhood. Both knew that street cars were operated in both directions on Lincoln Way. About opposite Third Avenue there is a driveway (hereinafter called Park Entrance) entering Golden Gate Park and that entrance is the most accessible way to the children's playground. It was an admitted fact that at the time of the accident and for some time prior thereto it was the practice of the defendant when approaching said Park Entrance to cause its cars to make a check stop, that is the car on approaching Park Entrance would "slow up to along around four miles an hour". That practice was known to the plaintiffs. A short time before the accident the plaintiffs drove from Fifth Avenue into Lincoln Way and turned easterly, traveling along the southerly line of Lincoln Way approximately midway between the curb and the inbound railway track. They were riding in a Studebaker coupe. Mr. Bailey was driving and Mrs. Bailey was sitting at his right. Shortly after entering Lincoln Way

Mr. Bailey slowed down from ten miles to five miles per hour. At that speed he continued according to the testimony of himself and of his wife until the time of the accident. As they drove forward a street car traveling east was ahead of them. That car stopped and then advanced but the plaintiffs did not pass it. It continued on its course ahead of them. When they approached Third Avenue that street car was nearly up to Second Avenue. Lincoln Way is about 80 feet wide. Third Avenue runs into it at right angles from the south. It is 40 feet from curb to curb. A sidewalk extends along the southerly line of Lincoln Way. On the northerly line there is no sidewalk but the street extends up to the line of Golden Gate Park. Nearly opposite Third Avenue a passageway, Park Entrance, for pedestrians and vehicles leads into Golden Gate Park making an acute angle with Lincoln Way. In other words, the union of Park Entrance and Lincoln Way resembles the letter "Y". It may readily be seen that the center of the intersection of Third Avenue and Lincoln Way does not necessarily coincide with the center of the intersection of Park Entrance and Lincoln Way. As to what may be the variation in that regard counsel have not called to our attention any part of the record that speaks on the subject. Having reached Third Avenue Mr. Bailey drove beyond the westerly curb three or four feet. As he did so he looked to the rear and saw no traffic approaching from the west. He testified that he gave a signal and thereupon commenced to turn to the left to go into Park Entrance. Continuing to advance, according to his testimony, he drove with his left wheel "over", "in", or "on" the center and the rest of his car was to the east. According to the testimony of Mrs. Bailey he passed beyond the center, and then turned. We do not find that either witness was asked what center. Before making the turn both Mr. Bailey and Mrs. Bailey looked to the east and at that time the inbound car was near Second Avenue. They saw no other car. However, slightly beyond Second Avenue there is a turn in Lincoln Way and from a point on the southern line of Lincoln Way near the corner of Third Avenue one can see but a short distance beyond Second Avenue. The record discloses that no other object or vehicle in any way

interfered with visibility in Lincoln Way. Having started to make the turn both Mr. Bailey and Mrs. Bailey again looked to the east and at that time they saw a car approaching from the east which for a time had been blanketed by the inbound car. Mr. Bailey testified that when he first saw the car coming toward them his automobile was between the rails of the east-bound car and the rails of the west-bound car. At that time the west-bound car was about at Second Avenue, a block away. That is the front of the car. At that time he was already upon the rails of its track. When he saw it he did not speed up. He continued the same speed down to the time of the collision. He did not put on his brakes, try to stop, nor try to back up. From the point where he made his observation he did not know whether the car was coming fast or slow. The only evidence he had of the speed of the oncoming car was the force with which it struck his automobile. After he first saw it he looked ahead at the traffic in Park Entrance. He then turned his head to the street car and at that time it was 50 feet away from him. He stepped on the gas but it was too late and the collision occurred. That happened when, according to the testimony of Mr. Bailey, the left-hand side of his automobile was in the center of Third Avenue if the lines thereof be extended. The rest of his automobile was to the east. At that particular time there was nothing on the surface of the street to indicate where the center was. It was his contention that between the time his automobile was over one rail of the outbound track the west-bound street car traveled a block and collided with the rear wheel of his automobile. He did not sound his horn to the street car but he did sound it to some pedestrians that were crossing to the park. At the time he sounded it he did not know that the street car was approaching. When he first saw the outbound car his automobile had advanced to a point where, if he had stopped, the oncoming car would have hit the front part of his car. He relied upon the fact that the west-bound car would slow up and therefore did not step on the gas. Mrs. Bailey testified that she first saw the west-bound car when it appeared from behind the car that was going east. At that time the latter car was about at Second Avenue. She noticed that the motorman had his head turned and was not looking to the front. She kept looking

at him and he did not turn his head. His face was turned to his left. She kept looking at him but was not a bit scared because she thought he would stop, slow up. She did not know the speed he was traveling otherwise she stated she would have shouted. She stated that when she first saw the west-bound car the plaintiffs were then on the tracks of the east-bound car, that the front wheels of their automobile were just about on the first rail of the outbound track. She was very positive in asserting that when she saw the westerly bound car emerge from behind the inbound car it was a block away—more than 240 feet. Mrs. Bailey and some other witnesses testified that the outbound car approached at a speed of from 30 to 35 miles per hour and did not slow down.

The defendant contends that Mr. Bailey was guilty of contributory negligence because he violated three different sections of the statute. (Secs. 23, 122 and 129, chap. 266, p. 517, Stats. 1923.) It is sufficient to state that the record does not disclose that he violated any one of them. Pointing to the testimony given by Mrs. Bailey to the effect that when she first saw the west-bound car, 240 feet away, the motorman was looking to his left and paying no attention to what was ahead of him, it is again asserted that the plaintiffs were guilty of contributory negligence. However, we think it is perfectly clear the plaintiffs were not bound to presume the motorman would continue his inattention to duty, or that he would not come to a check stop. Again, the defendant cites the evidence and contends that under the story as stated above the plaintiffs were guilty of contributory negligence as a matter of law. In this connection the defendant asserts that the plaintiffs exercised no care whatever. The statement is too broad. Bearing in mind the admitted fact that it had theretofore been the practice for the defendant to make check stops at Third Avenue, that both plaintiffs were familiar with the practice, and bearing in mind their numerous statements regarding the speed of their own car, the condition of the day, and the numerous times they looked in all directions, we think it is clear that reasonable minds might draw different conclusions upon the question of their negligence, if any, and that the question presented was one of fact for the jury.

■ Over the objection and exception of the defendant, the plaintiffs introduced in evidence the defendant's written rule or bulletin directing that the cars be slowed down to four miles per hour when passing Park Entrance at Third Avenue. The defendant cites and relies on *Smellie* v. *Southern Pacific Co.*, 128 Cal. 567, 578–583 [18 Pac. (2d) 97, 19 Pac. (2d) 982]. Conceding, solely for the purposes of this opinion, that the trial court erred, we think it is entirely clear that the error was not prejudicial. That written rule proclaimed nothing whatever except to state in writing the practice of slowing down at Park Entrance. As stated above, that practice was an admitted fact. Moreover, it was testified to by the witnesses and both Mr. and Mrs. Bailey testified to their knowledge of the practice. In this condition of the record it is impossible to see how a writing of the fact could constitute prejudicial error when there was much oral testimony on the same subject. ■ Regarding the defendant's interpretation of the bulletin, the latter attempted to introduce evidence but the trial court ruled it out. Thereafter the defendant requested instructions on the subject be given to the jury but those instructions were refused. We see no error in these rulings. The matters were entirely collateral to the issue on trial.

■ As stated above, several witnesses testified that the west-bound car approached at 35 miles per hour. Over the objection and exception of the defendant one witness testified that the car was going "exceedingly fast". In view of the other testimony that was admitted, the testimony objected to was harmless. (*Bennett* v. *Central California Traction Co.*, 115 Cal. App. 1, 8 [1 Pac. (2d) 47].)

■ Both parties tendered many requests for instructions. The trial court gave a large number and in doing so covered fully and completely every issue made by the pleadings. At this time the defendant complains because the trial court refused seven of its requests. Many of those requests were on subjects that were covered by the instructions given. Some of the requests singled out certain issues or isolated portions of the evidence, thereby intimating that special consideration should be given thereto. We have carefully examined each refusal and find no error.

■ In its closing brief the defendant added additional points. That practice is contrary to the statutes and the

rules. (2 Cal. Jur. 726 et seq.) However, in view of the importance of the litigation we have examined each additional point. Several of them are addressed to rulings on evidence. ██ In some of those rulings it may be conceded there was technical error; but as to each fact erroneously admitted there was an abundance of other evidence on the same subject which was properly admitted and therefore the defendant suffered no prejudice.

Other errors are assigned. All are different methods of presenting the alleged errors which we have discussed. Further discussion is not necessary.

The judgments appealed from are affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 28, 1935.