STANLEY BERNARDINI, APPELLANT, *v.* GERALDINE SALAS, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR JAMES WILLIAM SALAS AND MICHAEL SALAS, RESPONDENT.

No. 5566

December 10, 1968                     448 P.2d 43

[Rehearing denied January 8, 1969]

*Goldwater, Taber, Hill and Mortimer,* of Reno, for Appellant.

*Murray V. Dolan,* of Sparks, for Respondent.

## OPINION

By the Court, THOMPSON, C. J.:

The issue on this appeal is whether the district court abused its discretion in granting a new trial to the plaintiff on the ground of newly discovered evidence.

A wrongful death action, premised upon gross negligence, was commenced by the heirs of a deceased guest against the driver of a Jeep. The Jeep had overturned at night while descending a narrow, steep, winding, dirt mountain road. The three occupants of the Jeep had been hunting. No other vehicle was involved. The speed at which the driver propelled the Jeep down the mountain road was relevant to the issue of gross negligence. The sole witness at trial to speed was the defendant-driver. He said that his speed was five miles per hour. No other direct testimony on this subject was offered since one occupant was killed, and the other was not contacted.

The jury returned a defense verdict which the court set aside because of the affidavit evidence of two witnesses. The court apparently believed that their affidavits disclosed their competency to give material evidence on the issue of gross negligence,

and especially the speed of the Jeep's descent before overturning.

The affidavits were given by a husband and wife. The husband was asleep in a parked station wagon on the side of the mountain road approximately 75 to 100 feet from the point where the Jeep went off the road. The wife's affidavit does not state whether she was asleep or awake. Neither affiant visually observed the Jeep. They only heard it. The noise of the Jeep awakened the husband. Based upon that noise the husband concluded that the Jeep was going at a "high rate of speed"; and the wife surmised that the "Jeep was going too fast for the hill," and at a speed of "about 40 miles per hour." Other conclusory statements, not here material, also were given by each affiant. The issue, therefore, is whether a witness is competent to testify to the speed of a vehicle upon only hearing it pass. We turn to resolve that issue and its bearing upon the limits of trial court discretion in ruling upon the plaintiff's motion for a new trial.

One of several controls over that discretion is the requirement that the newly discovered evidence be competent, material and, if believed, would probably produce a different result. Lucey v. First National Bank, 73 Nev. 64, 69, 307 P.2d 774 (1957); Whise v. Whise, 36 Nev. 16, 24, 131 P. 967 (1913). Here, the proferred evidence did not come from witnesses who possessed competence to testify to the speed of the Jeep. A lay witness who does not see the vehicle in motion may not give an opinion as to its speed. Shaw v. Sylvester, 116 S.E.2d 351, 355 (N.C. 1960). It is not permissible to receive testimony as to speed based on sound alone. Meade v. Meade, 147 S.E.2d 171, 175 (Va. 1966); Thomas v. Dad's Root Beer, 356 P.2d 418, 419 (Ore. 1960). Noise is not an inevitable concomitant of speed. Carstensen v. Faber, 116 N.W.2d 161, 164 (Wis. 1962).

In Patton v. Henrikson, 79 Nev. 197, 200, 380 P.2d 916 (1963), we ruled that a non-expert witness may testify to the rate of speed of a moving vehicle if he is of ordinary intelligence and has had an adequate opportunity to observe the vehicle at the time in question. We now rule that a non-expert witness is not competent to testify to the rate of speed of a moving vehicle based upon sound alone.

Stripped of the incompetent material, the affidavits mean only that the affiants heard the noise of the Jeep and were

awakened by it. Surely, this evidence, if believed, would not probably produce a different result. We must conclude that the trial court, in these circumstances, exceeded the limits of its discretion in granting the plaintiff's motion for a new trial. Other points need not be considered.

Reversed.

Zenoff and Batjer, JJ., concur.

Collins, J., dissenting:

The opinion of the court in this case concedes that except for the competency and materiality of the evidence the lower court's award of a new trial would be proper. I will, therefore, confine my remarks to the limited issue of competency and materiality of the evidence, the ground upon which the reversal is granted.

The posture of this case as it comes to us is highly significant. As I read the majority opinion, no trial court in this state may hereafter receive opinion testimony as to speed based upon sound alone. That sweeping rule is predicated solely upon two affidavits offered in support of a new trial motion. It is not premised upon searching direct, cross and redirect examination of witnesses testifying at a trial as I believe any rule of this magnitude should be.

The majority opinion pares the affidavits to the bone in announcing its rule when it says, "Stripped of the incompetent material, the affidavits mean only that the affiant heard the noise of the Jeep and were awakened by it." However, when the affidavits are read in their entirety, much meat is to be found on those bones.[1]

---

[1]The affidavits, in material part, read as follows:

From the affidavit of Joseph A. Breyer: "That on November 13, 1965, I had hunted on Dog Skin Mountain with my wife. We intended to stay overnight and hunt the following day. I parked my 1953 station wagon as far up the mountain road as we could drive it. We were parked on a little flat stretch on the righthand side of the road as you come down, facing down hill.

"That about 7:00 p.m., my wife and I were in the back of my station wagon in our sleeping bags, I was awakened by the noise of a jeep going by our station wagon at a high rate of speed. The speed was so great it shook my station wagon. I was afraid it might start my car moving down hill. I told my wife 'They'll never make the bottom of the hill at that speed.'

"That shortly after that, I heard three rifle shots and I got up and put my clothes on as I knew something was wrong.

"That just after that, one of the passengers in the jeep ran up to us and told me they had had a little accident that was kind of serious. I

Moreover, we are not entitled to weigh the effect of the Breyer's affidavits. That is the trial court's prerogative. The trial judge in the exercise of his discretion clearly said they were of sufficient weight to produce a probably different result on retrial. We should limit our review to the appropriateness of the exercise of that discretion. I am frankly startled that the new trial awarded by the lower court is being reviewed by this court upon an evidentiary question rather than the question of judicial discretion.

Finally, I am not convinced the broad sweeping generalized rule announced by the majority in precluding absolutely a witness from expressing his opinion of speed based on sound alone is either correct or wise. There is much respectable authority to the contrary. See Marshall v. Mullin, 320 P.2d 258 (Ore. 1958) (lay witness may state impression of speed of motorcycle gained from sound of motor alone, but must express this impression in terms of whether movement was rapid or slow and not in miles per hour); Hauswirth v. Pom-Arleau, 119 P.2d 674 (Wash. 1951) (testimony of witnesses residing along highway who heard roar made by defendants' automobile and sound of collision immediately thereafter was admissible on question of speed); Bennett v. Central California Traction Co., 1 P.2d 47 (Cal.App. 1931) (witness who was in bed in residence facing the street allowed to testify whether street car which he heard on the street was traveling at a slow, moderate or rapid rate of speed); see also discussion in 32 C.J.S., Evidence § 546 (54) (judgment as to speed may be based on

---

asked him what he wanted me to do and he said he wanted me to drive the injured hunter to the hospital.

"That my wife and I pulled the station wagon down the hill about seventy-five (75) or one hundred (100) yards, and I helped them carry the injured man up the hill to my station wagon."

From the affidavit of Ethel Marie Breyer: "That on November 13, 1965, my husband hunted on Dog Skin Mountain and I accompanied him. We saw only one other vehicle, a jeep with three (3) men in it. They were going up hill higher than our camp.

"That about dark, my husband and I laid down on our sleeping bags in the back of our station wagon. I heard this jeep making a racket coming down the hill and as it passed, it shook our station wagon. They were going too fast for the hill. My husband and I both said they would never make the bottom of the hill going that fast. I believe the jeep was going about 40 mph.

"That about five (5) or ten (10) minutes after the jeep went by we heard several gun shots. Then a man came running up and told us they had had a bad accident. We drove our station wagon down the hill a little ways and they loaded one of the hunters, who was bleeding through his mouth, into our station wagon and we drove them all to Washoe Medical Center."

knowledge gained through feeling or hearing, rather than sight); 156 A.L.R. 382.

If the opinion restricted the prohibition to a witness who was awakened from a sound sleep, who could be shown by examination to have imperfectly heard a particular occurrence because of sleep-induced grogginess, then I might agree. But here, both Joseph and Ethel Breyer expressed the opinion from the sounds they heard that the Jeep was travelling down the precipitous mountain road at a "high rate of speed" or "too fast for the hill." It is true under the authorities quoted above they should not be allowed to express that speed in a given number of miles per hour, but they certainly knew from their own observations earlier that day the steepness of the road and, from sounds they heard that evening, whether any vehicle, including a four-wheel drive Jeep, was attempting to traverse it downhill in too fast a manner.

The majority apparently overlooks the fact that Ethel Breyer had not yet gone to sleep but was lying on the sleeping bag in the back of their station wagon when she first "heard the jeep making a racket coming down the hill." After dark in a wilderness area, sound has a totally different impact and significance than it has in an inhabited area. Every mountain noise draws the listener's attention in a far more perceptive degree than would a similar noise in the city.

It is legally unreal to preclude admission of a listener's opinion of the relative speed of a Jeep traveling down a precipitous mountain road, when the listener is lying awake in the still blackness of a wilderness area.

I am also concerned about the impact of this decision in other situations. A listener with his back to the regular flow of vehicular traffic on any street or roadway can certainly tell the difference from sound alone when an automobile comes racing by at a high rate of speed, or a dragster digs away from a stop light, with tires burning rubber, and upshifts without use of the clutch. Similarly, a person who can hear but not see an airplane fly by in the sky can know the difference in speed from a passing jet when compared to a propellor-driven aircraft. The instances when sound alone tells a message of comparative speed are only limited by the imagination. In this day and age and in contemplation of the future, it is indeed unrealistic to preclude every witness in this state from expressing an opinion upon speed from sound alone.

I dissent.

MOWBRAY, J., concurs.